FERNANDO BAYRÓN TORO y OTROS, demandantes y recurrentes, *v.* RAFAEL SERRA, ETC., demandados y recurridos.

*Número:* RE-85-568 *Resuelto:* 18 de noviembre de 1987

*Carmelo Guzmán Géigel,* de *Maymee & Guzmán Géigel,* abogados de los recurrentes; *Ernesto A. Meléndez Pérez,* abogado del recurrido, Sistema de Retiro de Puerto Rico; *Donato Rivera De Jesús,* abogado de los recurridos Universidad de Puerto Rico y el Consejo de Educación Superior.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Varios empleados del Recinto Universitario de Mayagüez acuden ante nos para que revisemos la desestimación de su demanda contra el Consejo de Educación Superior y la Administración del Sistema de Retiro de la Universidad de Puerto Rico. El Tribunal Superior concluyó que "en nuestra jurisdicción prevalece la doctrina jurisprudencial de que en casos de pensiones compulsorias éstas pueden ser modificadas mientras aún no han sido devengadas". En vista de la importancia de esta controversia, y de las nuevas corrientes doctrinales en esta área, acordamos revisar. Resolvemos que aunque un participante en un plan de retiro tiene un interés propietario de naturaleza contractual protegido por la garantía constitucional contra el menoscabo

de obligaciones contractuales, Constitución del Estado Libre Asociado de Puerto Rico, Art. II, Sec. 7, L.P.R.A., Tomo 1, ed. 1982, pág. 275, en este caso los cambios aprobados por el Consejo de Educación Superior fueron razonables. Confirmamos la sentencia del Tribunal Superior.

## I

■ La Ley de la Universidad de Puerto Rico, 18 L.P.R.A. sec. 601 *et seq.*, le impone al Consejo de Educación Superior la obligación indelegable de mantener un sistema de pensiones para todo el personal universitario, 18 L.P.R.A. sec. 602(e)(16), y de aprobar un reglamento a esos fines, 18 L.P.R.A. sec. 602(e)(5).

■ Conforme al mandato legislativo, el Consejo de Educación Superior estableció un sistema de retiro de naturaleza compulsoria para el personal universitario. El fondo del sistema se nutre de las contribuciones individuales de los participantes, las cuales son descontadas de su salario mensual, y de una aportación patronal. Reglamento del Sistema de Retiro de la Universidad de Puerto Rico (Reglamento), Art. VIII.

Con fecha de 27 de octubre de 1978, el Consejo de Educación Superior aprobó enmiendas al Reglamento en las que en esencia: (1) fija en cincuenta y cinco (55) años la edad mínima para que un participante pueda ser elegible a recibir una anualidad; (2) reduce el importe de la pensión que reciben aquellos participantes que se jubilen antes de haber cumplido cincuenta y ocho (58) años, y (3) aumenta la aportación de los participantes al fondo del sistema. Las mencionadas enmiendas le son de aplicación a aquellos participantes que ingresaron al sistema después de 1ro de julio de 1978 y a los que en dicha fecha tenían acumulados menos de veinte (20) años de servicio. A aquellos empleados

que a la fecha de las enmiendas ya eran elegibles para jubilarse, las mismas no les son de aplicación.

Los demandantes son empleados del Recinto Universitario de Mayagüez y participantes del Sistema de Retiro de la Universidad de Puerto Rico. Para julio de 1978, ninguno había alcanzado veinte años de servicio cotizable para efectos de la pensión, por lo que las enmiendas introducidas al Sistema de Retiro de la U.P.R. les afectan directamente. Presentaron acción de sentencia declaratoria en la que reclamaron que las enmiendas al Reglamento les despojaron de derechos adquiridos y de interés propietario.

Las partes estipularon los hechos y luego de presentar sendos memorandos de derecho, sometieron el caso para su resolución. La controversia sometida se limitó a si un empleado público, participante en un sistema de retiro de naturaleza compulsoria, adquiere algún derecho sobre dicha pensión, antes de devengar la misma y si las enmiendas al Sistema de Pensiones de la U.P.R. le violan algún derecho a los demandantes.

El juez de instancia, luego de estudiar la jurisprudencia de este Tribunal en materia de pensiones, concluyó que en Puerto Rico las pensiones compulsorias "pueden ser modificadas mientras aún no han sido devengadas". Determinó que el Consejo enmendó el Reglamento con el propósito de mantener la solidez económica del Sistema de Retiro de la U.P.R. en general. Finalmente decidió que el Consejo actuó válida y razonablemente para preservar la autosuficiencia del Sistema de Retiro de la U.P.R. y cumplir sus responsabilidades de que el personal universitario reciba los beneficios del mismo. Por estas razones, declaró sin lugar la demanda "por entender que la acción impugnada no viola derecho alguno de los demandantes".

## II

*Naturaleza jurídica de las pensiones*

A. *La doctrina en Estados Unidos*

Examinada para fines comparativos la doctrina en Estados Unidos, encontramos que en muchos estados prevalece la antigua teoría de que las pensiones son concesiones o dádivas del Gobierno, y que un empleado participante no adquiere derecho alguno sobre las mismas. *Pennie* v. *Reis*, 132 U.S. 464 (1889); *United States* v. *Teller*, 107 U.S. 64 (1882); *Dodge* v. *Board of Education*, 302 U.S. 74 (1937); *Board of Trustees* v. *People*, 203 P.2d 490 (Colo. 1949); *Campbell* v. *Michigan Judges Retirement Bd.*, 143 N.W.2d 755 (Mich. 1966); *Board of Trustees* v. *Cary*, 373 So. 2d 841 (Ala. 1979); *State* v. *City of Jacksonville Beach*, 142 So. 2d 349 (Fla. 1962); *Board of Tr. of Pub. Emp. Ret. 7* v. *Hill*, 472 N.E.2d 204 (Ind. 1985); *State ex rel Parker* v. *Bd. of Ed.*, 129 P.2d 265 (Kan. 1942); Anotación, *Vested Right of Pensioner to Pension*, 52 A.L.R.2d 437, 442. Esta conceptualización de las pensiones como privilegios del Estado, que éste puede alterar con entera libertad, surge de sistemas de pensiones que no cuentan con aportación alguna por parte de los empleados y beneficiarios. Nota, *Pensions: Public Employee Pension Plans as Contractual Obligations Granted Constitutional Protection*, 20 Washburn L.J. 169 (1980); *United States* v. *Teller*, supra. De hecho, en planes de retiro que funcionan sin contribución de los participantes todavía predomina esta visión. Anotación, *supra*, pág. 441.

*Pennie* v. *Reis*, supra, recoge la teoría en la que se fundamenta el concepto de la pensión como un privilegio. Su hipótesis es que en un sistema de retiro de participación compulsoria, la contribución del empleado al fondo no es parte de su salario, sino dinero del Estado que nunca pasa

al control o dominio del participante. Por lo tanto, siempre continúa como un fondo público. *Pennie* v. *Reis*, supra, pág. 471; *Board of Trustees* v. *People*, supra; *Campbell* v. *Michigan Judges Retirement Bd.*, supra; R. Cohn, *Public Employee Retirement Plan*, 1968 U.Ill.L.F. 32, 38 (1968). Desde sus comienzos, la doctrina diferenció la naturaleza jurídica de los planes de retiro compulsorios de aquellos de tipo voluntario, y reconoce a estos últimos naturaleza contractual. *Pennie* v. *Reis*, supra. Esta distinción perdura todavía en muchos estados. *Campbell* v. *Michigan Judges Retirement Bd.*, supra; *Board of Trustees* v. *Cary*, supra; *Board of Tr. of Pub. Emp. Ret. 7* v. *Hill*, supra; Cohn, *op. cit.*, págs. 33–34; Anotación, *supra*, pág. 443; Nota, *Public Employee Pensions in Times of Fiscal Distress*, 90 Harv. L. Rev. 992, 999 (1977).

En las últimas décadas mientras la teoría de la dádiva ha perdido apoyo, la teoría contractual ha ganado adeptos entre los tribunales estatales. Véanse: *In re State Employee's Pension Plan*, 364 A.2d 1228 (Del. 1976); *Miles* v. *Tennessee Consolidated Retirement System*, 548 S.W.2d 299 (Tenn. 1976); *Pyle* v. *Webb*, 489 S.W.2d 796 (Ark. 1973); *Christensen* v. *MPLS. Mun. Emp. Retire. Bd.*, 331 N.W.2d 740 (Minn. 1983); *Smith* v. *City of Dothan*, 188 S.2d 532 (Ala. 1966); *Police Pension & Relief Bd.* v. *Bills*, 366 P.2d 581 (Colo. 1961); *State Teachers Retirement Bd.* v. *Giesel*, 106 N.W.2d 301 (Wis. 1960); *Eisenbacher* v. *City of Tacoma*, 333 P.2d 642 (Wash. 1958); *Wright* v. *Retirement Bd.*, 134 A.2d 231 (Pa. 1957); *Wallace* v. *City of Fresno*, 265 P.2d 884 (Cal. 1954); *Tait* v. *Freeman*, 57 N.W.2d 520 (S.D. 1953); *Payne* v. *Board of Trustees*, 35 N.W.2d 553 (N.D. 1948); *Gossman* v. *State Employees*, 129 N.W.2d 97 (Neb. 1964). La teoría que le atribuye derechos y garantías de tipo contractual a los participantes en sistemas de retiro, no cuenta con una interpretación uniforme en la doctrina. Por un lado, encontramos estados que, según el precedente establecido

por Nueva York, han reconocido, mediante disposición constitucional a esos efectos, que la participación en un sistema de retiro público da origen a una relación contractual la cual no puede ser alterada o modificada.[1] Igual norma se sigue en Arizona, aunque ésta fue incorporada mediante fíat judicial. *Yeazell* v. *Copins*, 402 P.2d 541 (Ariz. 1965); Cohn, *op. cit.*, págs. 42-46. Otros estados le reconocen al pensionado un derecho adquirido sobre su pensión una vez éste se retira o cumple con los requisitos para ello. *Klam* v. *State*, 126 N.E.2d 487 (Ind. 1955); *Rockenfield* v. *Kuhl*, 46 N.W.2d 17 (Iowa 1951); *Louisville* v. *Bd. of Education*, 163 SW.2d 23 (Ky. 1942). Nueva Jersey por su parte ha adoptado una posición ecléctica que parte de la premisa de que, aunque el plan sea de participación compulsoria, las contribuciones de dinero hechas por el empleado provienen del sueldo devengado, lo que le confiere al empleado un interés propietario en el fondo, mas no en los beneficios de la pensión. *Spina* v. *Consolidated Police & Firemen's Pension Fund*, 197 A.2d 169 (N.J. 1964).

Entre las jurisdicciones que propugnan la teoría contractual, California y Pennsylvania son las que más extensamente han pautado normas aplicables a sistemas parecidos al de la Universidad de Puerto Rico. Véanse: *Retirement Bd.* v. *McGovern*, 174 A. 400 (Pa. 1934); *McBride* v. *Allengheny County*, 199 A. 130 (Pa. 1939); *Hamilton* v.

---

[1] Constitución del Estado de Nueva York, Art. V, Sec. 1.

"A partir de 1 de julio de 1940, la participación en cualquier sistema de pensión o retiro estatal o de cualquier división civil del estado será de tipo contractual; estos beneficios no se podrán reducir o menoscabar en forma alguna." (Traducción nuestra.) McKinney's Const. Art. 5, Sec. 7.

Véanse disposiciones similares en las constituciones de los siguientes estados:
Alaska, Art. XII, Sec. 7
Illinois, Art. 9, Sec. 5
Michigan, Art. 9, Sec. 24
Hawaii, Art. IX, Sec. 24.

*Wilson*, 94 A.2d 116 (Pa. 1953); *Hickey* v. *Pension Bd.*, 106 A.2d 233 (Pa. 1954); *Catania* v. *Com. State Employee's*, 450 A.2d 1342 (Pa. 1982); *Kern* v. *City of Long Beach*, 179 P.2d 799 (Cal. 1947); *Packer* v. *Board of Retirement*, 217 P.2d 660 (Cal. 1950); *Terry* v. *City of Berkeley*, 263 P.2d 833 (Cal. 1953); *Wallace* v. *City of Fresno*, supra; *Allen* v. *City of Long Beach*, 287 P.2d 765 (Cal. 1955); *Abbot* v. *City of Los Angeles*, 326 P.2d 484 (Cal. 1958); *Adler* v. *City of Pasadena*, 371 P.2d 315 (Cal. 1962).

En California, el empleado que acepta un empleo y comienza a desempeñarse en su puesto, adquiere un derecho de naturaleza contractual sobre su anualidad de retiro. Antes de jubilarse el empleado no tiene derecho a unos beneficios en particular, fijos y definidos, sólo tiene derecho a una pensión sustancial y razonable. *Kern* v. *City of Long Beach*, supra; *Wallace* v. *City of Fresno*, supra. Esto es así porque el sistema de pensión está sujeto a modificaciones, siempre que éstas sean razonables y estén relacionadas con el interés de proteger la integridad y solvencia económica del Sistema de Retiro. *Allen* v. *City of Long Beach*, supra, pág. 767; *Abbot* v. *City of Los Angeles*, supra; *Adler* v. *City of Pasadena*, supra; Anotación, *supra*, págs. 444–446; Nota, *supra*, págs. 1001–1003. Una vez el participante se retira y comienza a recibir el pago de su pensión, ésta no puede ser enmendada en forma que resulte en un menoscabo para el pensionado. *Terry* v. *City of Berkeley*, supra, pág. 836.

B. *Las pensiones en Puerto Rico*

En Puerto Rico, el estado de derecho vigente en materia de pensiones de retiro, fue influido notablemente por la decisión del Tribunal de Apelaciones de Estados Unidos para el Primer Circuito en el caso *McLeod* v. *Fernández*, 101 F.2d 20 (1938).

Hasta ese caso, este Tribunal, según el análisis de *Pennie* v. *Reis*, supra, había establecido que una pensión concedida

no confería un derecho adquirido a su beneficiario, y el disfrute de la misma podía ser suspendido retroactivamente. Adoptamos la teoría de que una pensión era una concesión o dádiva otorgada como acto voluntario y de gracia del soberano "[que] no pone a éste en una obligación estricta y de naturaleza contractual", ni en su origen ni en su continuación. *Domenech* v. *Junta de Pensiones*, 42 D.P.R. 604, 608 (1931); *Luján* v. *Comisión de la Policía Insular*, 38 D.P.R. 58 (1928). Sólo las pensiones devengadas y no pagadas constituían un derecho adquirido. *Escartín* v. *Comisión Policía Insular*, 52 D.P.R. 725, 727 (1938).

En *Fernández* v. *McLeod*, 52 D.P.R. 899 (1938), declaramos que si bien la Asamblea Legislativa tiene amplia facultad para enmendar las condiciones de un plan de pensiones, esta autoridad cesa una vez el empleado cumple con las condiciones necesarias para el retiro y desde que en efecto comienza a recibir la pensión, ya que entonces el empleado tiene un derecho adquirido sobre su anualidad. *Fernández* v. *McLeod*, supra, pág. 911. Además, acogimos la distinción entre los sistemas de pensiones de aportación compulsoria y los voluntarios, consideramos que de estos últimos surgían relaciones contractuales.

No obstante, esta decisión fue revocada por el Tribunal de Apelaciones del Primer Circuito.(²) Dicho foro adoptó la teoría de que dado que el dinero del fondo nunca está bajo el control ni a la disposición del participante, éste no adquiere derecho alguno sobre el mismo, por lo que el Gobierno retiene la facultad de modificar los términos de la pensión, al grado de poderla eliminar del todo. *McLeod* v. *Fernández*, 101 F.2d 20, 25 (1938). Obligados por esta

---

(²) Hasta el 1961 las decisiones del Tribunal Supremo de Puerto Rico eran revisadas por el Tribunal de Apelaciones de Estados Unidos para el Primer Circuito. Véase A. J. Amadeo Murga, *Distribution of Power Between Federal and Local Courts and the Rise of Federalism in the Commonwealth of Puerto Rico*, 20 Rev. Col. Abo. P.R. 29 (1959).

decisión, reiteramos posteriormente que el pensionado no tenía derechos adquiridos. *García* v. *Gallardo*, 56 D.P.R. 166 (1940); *Torres* v. *Winship*, 56 D.P.R. 693 (1940); *Esteves* v. *Junta de Retiro*, 60 D.P.R. 98 (1942).

Sin embargo, mediante decisiones posteriores, sentamos la base para la eventual eliminación de la doctrina tradicional. En *Rivera* v. *Rodríguez*, 93 D.P.R. 21 (1966), manifestamos que "[c]on el advenimiento de las democracias populares y la desaparición de los regímenes monárquicos, el fundamento jurídico de la pensión no lo constituye un acto de recompensa del soberano, sino una obligación moral del [E]stado. Se rechaza, pues, el carácter de donación de la pensión". *Rivera* v. *Rodríguez*, supra, pág. 24. Luego describimos las pensiones como "una retribución final y bien ganada por el empleado público que honrando una vocación de servicio, que en muchas ocasiones conlleva sacrificio y renuncia de bienes materiales, dedica los años fructíferos de su vida al bien común". *Román Mayol* v. *Tribunal Superior*, 101 D.P.R. 807, 811 (1973); *Maldonado* v. *Tribunal Superior*, 100 D.P.R. 370 (1972); *Sánchez Nieves* v. *A.S.R.E.G.J.*, 116 D.P.R. 372 (1985). El caso ante nuestra consideración nos permite reconsiderar nuestros pronunciamientos previos y continuar con la trayectoria que comenzamos en *Fernández* v. *McLeod*, supra.

Al reevaluar la naturaleza jurídica de las pensiones de empleados públicos en Puerto Rico, debemos tomar en consideración los objetivos de las mismas. Aclaramos que en este caso no nos manifestamos sobre algún otro tipo de pensión de naturaleza diferente, como podrían ser las de rango o mandato constitucional.

Para el patrono, un plan de retiro representa un incentivo que facilita el reclutamiento y retención del personal de calidad. A la vez, hace posible la renovación periódica de sus recursos humanos según los empleados de más edad se acogen a los beneficios de la jubilación. Desde

el punto de vista del empleado, un sistema de retiro es un beneficio marginal de considerable importancia. Para muchos significa una fuente de ingreso futuro, que le permitirá disfrutar su vejez con razonable seguridad económica. "El derecho a pensión de retiro por años de servicio del empleado público tiene un respetable contenido ético y moral y constituye un seguro de dignidad para el hombre o la mujer que habiendo dedicado al servicio público sus años fecundos, no debe encontrarse en la etapa final de su vida en el desamparo, o convertido en carga de parientes o del Estado. *Román Mayol* v. *Tribunal Superior*, 101 D.P.R. 807, 811 (1973)." *Rosa Resto* v. *Rodríguez Solís*, 111 D.P.R. 89, 92 (1981).

Para el Gobierno, estos objetivos son particularmente significativos, ya que no puede competir con los salarios que ofrece la empresa privada. Anteriormente, hemos reconocido los sacrificios económicos que conlleva la dedicación al servicio público. *Román Mayol* v. *Tribunal Superior*, supra, pág. 811; *Acuña* v. *Junta de Retiro*, 58 D.P.R. 94 (1941); *Maldonado* v. *Tribunal Superior*, supra; *Sánchez Nieves* v. *A.S.R.E.G.J.*, supra. Sólo si se ofrecen beneficios marginales tales como un atractivo plan de retiro, puede el Gobierno atraer personal competente, que de otra forma ofrecería sus servicios a la empresa privada. Véanse: Cohn, *op. cit.*, págs. 40–41; Nota, *Contractual Aspects of Pension Plan Modification*, 56 Colum. L. Rev. 251, 254 (1956).

En estas circunstancias, desafía toda lógica concebir de qué forma se adelantan los objetivos de las pensiones al caracterizarlas como dádivas o gracias del Estado. Es indiscutible que cuando alguien acepta una oferta de empleo toma en consideración y descansa en la seguridad que le brinda el sistema de retiro que le ofrece dicho empleo. Véanse: *Pineman* v. *Oechslin*, 494 F. Supp.

525, 539 (1980); *Wright* v. *Retirement Bd.*, 134 A.2d 231 (Pa. 1957). Cuando una persona ingresa al servicio público acepta como parte esencial de su contrato de empleo, los términos y condiciones del plan de retiro. En el caso del Sistema de Retiro de la Universidad de Puerto Rico, al convertirse en empleado de la Universidad, la persona automáticamente adviene como participante en el sistema.[3]

Por otra parte, es difícil argumentar que las aportaciones de un empleado al fondo de retiro no son propiedad suya; por el contrario, el hecho de que el empleado contribuya al fondo abona a la conclusión de que el empleado tiene un interés adquirido de naturaleza contractual. *Pineman* v. *Oechslin*, supra; *Campbell* v. *Michigan Judges Retirement Board*, 143 N.W.2d 755 (Mich. 1966); *Hickey* v. *Pension Bd.*, supra. Particularmente frágil resulta la teoría de que las aportaciones no son propiedad del empleado, si consideramos que en caso de separación del servicio sin ser elegible para una anualidad, el empleado tiene derecho a solicitar el reembolso del importe de sus aportaciones al sistema.[4]

---

[3] Se exceptúan de participar en el sistema a aquellos empleados:
"—compensados de jornal por hora
"—en posiciones temporeras
"—empleados sustitutos
"—que trabajan menos de dieciocho (18) horas a la semana
"—profesores visitantes
"—los que rinden servicios bajo contrato, siempre que dicho contrato no requiera empleo a tiempo completo con beneficios y obligaciones similares a un empleado regular
"—empleados después de haber cumplido 55 años de edad, a menos que tengan crédito por servicios rendidos en algún Sistema de Retiro del Gobierno
"—que reciban pensión de otro Sistema de Retiro del Gobierno
"—que reciban crédito por sus servicios en la Universidad en otro Sistema de Retiro del Gobierno federal."
Reglamento del Sistema de Retiro de la Universidad de Puerto Rico, Art. I.

[4] Esto es así tanto en el Sistema de Retiro de la Universidad de Puerto Rico, Reglamento, Art. VI, Sec. 1, como en el Sistema de Retiro de los Empleados del Gobierno de Puerto Rico, 3 L.P.R.A. sec. 774.

618

El elemento definidor de este contrato se centra en el acuerdo de voluntades entre el Estado y el empleado, dirigido a producir un efecto jurídico vinculante para las partes. Véanse: J. Castán Tobeñas, *Derecho civil español, común y foral*, 11ma ed., Madrid, Ed. Reus, 1974, T. 3, pág. 404 y ss.; F. Messinèo, *Dottrina Generale del Contratto*, 3ra ed., Milano, Dott. A. Giuffré, 1953, pág. 55 y ss. A esto añadimos el contenido patrimonial del acuerdo, el cual en este caso es causa directa de la emisión de la voluntad.(5)

La solución más adecuada es aquella que nos permita armonizar, por un lado, el interés de proteger los derechos de los participantes y, por el otro, el de permitirle al Estado la libertad de adoptar cambios que garanticen la estabilidad y solvencia del sistema.

 Por los fundamentos antes expuestos, abandonamos la arcaica noción de que las pensiones son una gracia o dádiva del soberano. Resolvemos que los participantes de un Sistema de Retiro del Gobierno tienen un derecho adquirido de naturaleza contractual que surge con el ingreso del empleado al sistema, independientemente de que la participación sea voluntaria o compulsoria. Una vez el empleado se ha retirado, cuando ha cumplido con todas las condiciones para el retiro, su pensión no está sujeta a cambios o menoscabos. *Fernández* v. *McLeod*, supra. Sin embargo, antes de que pueda acogerse a la jubilación, los términos del sistema de retiro pueden ser enmendados por el Gobierno siempre que las enmiendas sean razonables y con el fin de adelantar la solvencia actuarial del mismo.

Procede entonces que evaluemos si las enmiendas al Reglamento del Sistema de Retiro de la Universidad de

---

(5) En relación con el tema de la naturaleza jurídica de los contratos del Estado, en general, véase J. I. Monedero Gil, *Doctrina del Contrato del Estado*, Madrid, Inst. Estudios Fiscales, 1977.

Puerto Rico aprobadas por el Consejo de Educación Superior constituyen un indebido menoscabo de las obligaciones contractuales en contravención con la prohibición constitucional. Const. E.L.A., Art. II, Sec. 7, *supra*.[6]

## III

*Menoscabo de las obligaciones contractuales*

■ Al analizar la posibilidad de que exista un menoscabo de obligaciones contractuales, según prohibido por nuestra Constitución, Art. II, Sec. 7, *supra*, debemos tener presente que las decisiones del Tribunal Supremo federal interpretan la cláusula análoga de la Constitución federal, Art. I, Sec. 10, constituyen el mínimo que estamos obligados a reconocerle en nuestro ordenamiento.

■ Está claramente establecido en la doctrina que la disposición constitucional, que prohíbe el menoscabo de obligaciones contractuales, no constituye una prohibición absoluta que impida el poder de reglamentación del Estado" en beneficio del interés público. *Warner Lambert Co.* v. *Tribunal Superior*, 101 D.P.R. 378, 394 (1973); *Trustees of Dartmouth College* v. *Woodward*, 17 U.S. 518 (1819); *W.B. Worthen Co.* v. *Thomas*, 292 U.S. 426, 433 (1934); *Allied Structural Steel Co.* v. *Spannaus*, 438 U.S. 234, 240 (1978); R. Epstein, *Toward a Revitalization of the Contract Clause*, 51 U. Chi. L. Rev. 703, 717 (1984). No todo menoscabo contractual contraviene la prohibición constitucional. *El*

---

[6] Los demandantes argumentan que se les violó su derecho a ser oídos, ya que las enmiendas al Reglamento de Retiro fueron aprobadas sin su participación. El planteamiento es claramente inmeritorio, ya que seis (6) de los doce (12) miembros de la Junta de Retiro, organismo que le recomienda al Consejo de Educación Superior la adopción de los cambios en el Reglamento, son elegidos por los participantes del sistema y fungen como sus representantes.

*Paso* v. *Simmons*, 379 U.S. 497, 506–507 (1965); *United States Trust Co.* v. *New Jersey*, 431 U.S. 1, 16 (1977). R. Rotunda, J. Nowak y J. Young, *Treatise on Constitutional Law: Substance and Procedure*, Minnesota, West Pub. Co., 1986, Sec. 15.8.

■ "Al considerar la validez de estatutos bajo la cláusula de menoscabo el criterio aplicable es el de razonabilidad. La función del tribunal consiste en establecer un balance razonable entre el interés social de promover el bien común y el interés, también social, de proteger las transacciones contractuales contra la aplicación arbitraria e irrazonable de las leyes." *Warner Lambert Co.* v. *Tribunal Superior*, supra, pág. 395.

■ Esta cláusula limita el poder del Estado para interferir tanto con la contratación privada como la suya propia. *Fletcher* v. *Peck*, 6 Cranch 87, 137–139 (1810); *Dartmouth College* v. *Woodward*, supra; *United States Trust Co.* v. *New Jersey*, supra, pág. 17; Epstein, *supra*, págs. 718–719. Cuando nos confrontamos con la situación en que el Estado modifica sus propias obligaciones, el escrutinio judicial debe ser más cuidadoso para asegurar que la actuación del Estado no sólo sea en beneficio propio. *United States Trust Co.* v. *New Jersey*, supra, págs. 25–26; Nota, *Rediscovering the Contract Clause*, 97 Harv. L. Rev. 1414, 1417 (1984). En estos casos la modificación, además de ser razonable, debe ser también necesaria para adelantar un propósito gubernamental importante. *United States Trust Co.* v. *New Jersey*, supra, pág. 29.

■ Al evaluar, pues, una modificación a una obligación del Gobierno, debemos determinar en primer lugar si estamos ante una obligación contractual protegida por la Constitución. En segundo lugar, es preciso que la modificación en la obligación en efecto constituya un

menoscabo de una obligación contractual. Una vez determinado que existe un menoscabo, entonces debemos precisar si el mismo viola la garantía constitucional. *United States Trust Co.* v. *New Jersey*, supra. Si éste surge como consecuencia de una modificación razonable y necesaria dirigida a adelantar un interés público, sostendremos su validez. *Warner Lambert Co.* v. *Tribunal Superior*, supra; *United States Trust Co.* v. *New Jersey*, supra.

Dentro de este marco conceptual, analicemos las enmiendas al Reglamento del Sistema de Retiro de la Universidad de Puerto Rico.

## IV

*Validez de las enmiendas al Reglamento del Sistema de Retiro*

Ya hemos establecido que los planes de pensiones del Gobierno constituyen obligaciones de naturaleza contractual. También debe estar claro que las enmiendas impugnadas resultan en menoscabo de las obligaciones del Sistema de Retiro de la U.P.R. En primer lugar, se aumenta de 55 a 58 años la edad a la que un participante en el Sistema de Retiro de la U.P.R. con por lo menos 30 años de servicio puede retirarse y recibir el 75% de su compensación promedio. Reglamento del Sistema de Retiro de la U.P.R. Art. III, Sec. 3. También se limita la elegibilidad para recibir una anualidad de retiro por años de servicio a aquellos participantes que tengan 55 años de edad. Por último, aumenta el porcentaje de aportación individual al fondo del sistema. Reglamento del Sistema de Retiro de la U.P.R., Art. VIII, Sec. 1.[7]

_____

[7] Antes de la enmienda impugnada, todo participante aportaba mensualmente:

"a) Cuatro (4%) por ciento de los primeros $350.00 de su sueldo mensual más

Al momento en que el Consejo de Educación Superior adopta las enmiendas al Reglamento del Sistema de Retiro de la U.P.R., éste se encontraba ante una grave crisis actuarial, que ponía al sistema en peligro de tener que liquidar sus activos. Véase Op. Sec. Just. Núm. 1978-18. En un informe rendido por los actuarios se señala que los desembolsos del fondo aumentaron a un nivel mayor que los ingresos y se señala como causa principal para la deficiencia actuarial la jubilación de participantes a temprana edad.

El Sistema de Retiro de la Universidad de Puerto Rico debe funcionar sobre bases actuariales que lo hagan autosuficiente. Op. Sec. Just. Núm. 1978-18. En última instancia, la responsabilidad de que los participantes del Sistema de Retiro de la U.P.R. reciban los beneficios del mismo recae sobre el Consejo de Educación Superior. En el descargo responsable de sus deberes, el Consejo adoptó las medidas correctivas necesarias para salvar la solidez económica y la existencia misma del Sistema de Retiro de la U.P.R.

▬ Debemos tener presente que subyacente en todo sistema de retiro público similar al que hoy nos ocupa, está el interés primordial, tanto del Estado como de los participantes, de establecer y conservar un fondo monetario suficiente para garantizar la solvencia económica del sistema. Este es un factor importante en la relación entre el Estado como patrono y el empleado participante en lo que respecta al pago de la pensión. Dentro del contexto de

---

"b) Seis y medio (6½%) por ciento de la porción de dicho sueldo en exceso de $350.00."

Con las enmiendas, la aportación mensual es como sigue:

"a) Cinco (5%) por ciento de su compensación mensual hasta la cantidad máxima cotizable a Seguro Social, sin que ésta exceda de $2,500 mensuales, más

"b) Siete (7%) por ciento en exceso de dicha cantidad hasta la cantidad máxima de $2,500 mensuales."

esta relación, el Estado debe tener la capacidad y la flexibilidad para hacer cambios y enmiendas razonables que sean necesarias para adelantar los intereses del Sistema de Retiro y fortalecerlo tanto en sus cimientos como en sus estructuras. Variaciones en condiciones y requisitos tales como años de servicio, aportaciones al fondo y edad para recibir los beneficios son esenciales para mantener el fondo en estado solvente. Esta flexibilidad es vital para que el Sistema de Retiro pueda enfrentarse a situaciones inesperadas y para que pueda también mantenerse a la par con avances en las ciencias actuariales. Reconocerle al Estado la facultad de adoptar modificaciones en los sistemas de retiro dentro de los parámetros aquí expresados, es indispensable para que estos planes puedan operar exitosamente.

Al adoptar este enfoque ecléctico le facilitamos al Estado los instrumentos para mantener la solvencia económica de los sistemas de retiro y a la vez le brindamos protección a los derechos de los empleados participantes.

Resolvemos, por lo tanto, que las modificaciones al Reglamento del Sistema de Retiro de la U.P.R., aprobadas por el Consejo de Educación Superior, el 27 de octubre de 1978, son cambios razonables y necesarios, a la luz de las circunstancias del caso, dirigidos a salvar la solvencia actuarial del Sistema de Retiro, por lo que no existe un indebido menoscabo de obligaciones contractuales.

Por las razones expuestas anteriormente, *se confirmará la decisión del Tribunal Superior, Sala de San Juan.*

El Juez Asociado Señor Rebollo López concurre en el resultado sin opinión escrita. El Juez Asociado Señor Alonso Alonso emitió un voto particular.

—O—

Voto particular del Juez Asociado Señor Alonso Alonso.

Coincido con la opinión mayoritaria en que el Estado cumplió con su obligación de demostrar que no hubo menoscabo de la relación contractual con los demandantes. Las modificaciones al Reglamento del Sistema de Retiro de la U.P.R. fueron razonables, necesarias e indispensables para garantizar la solvencia del sistema. La certificación Núm. 37, aprobada por el Consejo de Educación Superior, tuvo como base la recomendación de la Junta del Sistema de Retiro de la U.P.R., recomendación que estuvo a su vez fundada en la recomendación de los actuarios a la Junta, conforme lo dispuesto por el Art. XI, Sec. (1)(i) del Reglamento del Sistema de Retiro de la U.P.R.

La opinión mayoritaria expresa que "[a]l adoptar [un] enfoque *ecléctico* le facilitamos al Estado los instrumentos para mantener la solvencia económica de los sistemas de retiro y a la vez le brindamos protección a los derechos de los empleados participantes". (Énfasis suplido.) Opinión del Tribunal, pág. 623.

Esta norma conciliadora de intereses encontrados no debe interpretarse como un cheque en blanco para que el Estado modifique los derechos de los participantes de un sistema de retiro.

Los criterios de razonabilidad y necesidad del cambio para salvar la solvencia actuarial del sistema deben interpretarse restrictivamente en favor de los participantes del sistema de retiro.

La política pública del Estado es fomentar *servidores públicos de carrera*. Para éstos, un adecuado sistema de retiro es no sólo un beneficio marginal importante, sino una seguridad de que luego de prestar servicios al Estado con grandes sacrificios personales y económicos, contarán al

momento del retiro con al menos una razonable seguridad económica.

Tal expectativa no debe tomarse livianamente. Hemos contado con servidores públicos ejemplares que han dedicado los mejores años de sus vidas a servirle a su país con desprendimiento, dedicación y anteponiendo el interés público a su interés personal. Tal tradición no debe debilitarse. Por el contrario, debe fortalecerse.

El Estado y las entidades que tienen responsabilidad sobre la administración y buena marcha de los sistemas de retiro tienen sobre sus hombros una gran responsabilidad de mantener la solvencia de los sistemas de retiro y de administrarlos con debido cuidado y prudencia.

El Estado no debe justificar cambios al sistema de retiro al alegar que son necesarios y razonables para mantener la solvencia económica de éste cuando la debilidad fiscal del mismo se debe al descuido y a la falta de cuidado del Estado propiamente. En el caso de autos, ello no ocurrió. Por esa razón, he dado mi conformidad.