Opinión disidente emitida por el
Juez Presidente Señor Hernández Denton.
Disentimos del curso de acción que ha seguido hoy una mayoría del Tribunal, pues éste, luego de un trámite judicial apresurado que resulta contrario al debido proceso de ley, elimina los derechos adquiridos sobre sus empleos de miles de servidores públicos, en violación de la prohibición constitucional contra el menoscabo de obligaciones con-tractuales establecida tanto en la Constitución del Estado Libre Asociado de Puerto Rico como en la Constitución de Estados Unidos. Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1; Art. I, Sec. 10, Const. EE. UU., L.P.R.A. Tomo 1. Específicamente, la Opinión que emite el Tribunal para de-clarar la constitucionalidad de la Ley Núm. 7 de 9 de marzo de 2009 se fundamenta en un expediente judicial desprovisto de la prueba necesaria para resolver de forma adecuada y fundamentada la controversia.
Peor aún, ésta ni siquiera cumple con el ámbito mínimo de protección establecido por la Constitución federal, colo-cándonos al margen de la normativa que formuló el Tribunal Supremo de Estados Unidos sobre la referida prohibi-ción constitucional en United States Trust Co. v. New Jersey, 431 U.S. 1 (1977), y que adoptó este Tribunal en Bayrón Toro v. Serra, 119 D.P.R. 605 (1987). La necesidad de un expediente judicial completo que contenga prueba que permita evaluar adecuadamente los criterios estable-cidos en dicha jurisprudencia resulta aún más imperiosa al considerar la magnitud del impacto de la Ley Núm. 7, supra, en los empleados públicos afectados y el efecto que la decisión del Tribunal tendrá en el país.
A nuestro juicio, la decisión que el Tribunal emite en el caso de autos se toma basada únicamente en el propio texto de la Ley Núm. 7, supra, y su Exposición de Motivos, *102 sin que se haya presentado en los tribunales la prueba necesaria para establecer que el plan de cesantías decre-tado era la alternativa menos onerosa de acuerdo con la situación fiscal, según lo requerido por la doctrina estable-cida por el Tribunal Supremo de Estados Unidos, y sin per-mitir que los empleados cesanteados la refutaran. Con la Opinión del Tribunal en este caso, nos colocamos al mar-gen de la Constitución federal y correspondería entonces al Tribunal Supremo de Estados Unidos rectificar esta decisión. Por ello, nos vemos obligados a disentir.
I
A. Como se deduce de la Opinión del Tribunal, cada uno de los recursos de epígrafe llegó ante la consideración de este Foro a pocos días de presentarse las demandas co-rrespondientes ante el Tribunal de Primera Instancia y diligenciarse los emplazamientos. En todos los recursos el Estado compareció ante nos mediante sus respectivas pe-ticiones de certificación, sin que se dilucidara la controver-sia en el foro de instancia. En éstas, el Estado nos solicitó obviar el trámite ordinario bajo el fundamento de que esta Curia debía adjudicar la controversia en primera instan-cia, según lo dispuesto en el Art. 69 de la Ley Núm. 7, supra, el cual dispone que, a solicitud de una parte, este Tribunal
... expedirá un auto de certificación ... para traer inmedia-tamente ante sí y resolver cualquier asunto pendiente ante el Tribunal de Primera Instancia o ante el Tribunal de Apelacio-nes cuando se plantee la validez o constitucionalidad de [l]a Ley ... o cualquier impugnación a la misma de cualquier naturaleza.
A pesar de la naturaleza discrecional y excepcional que caracteriza al recurso de certificación, este Tribunal no va-ciló en expedir dichos recursos. Al circunvalar el trámite *103 ordinario en los casos de epígrafe, el Tribunal no contó con un expediente para dilucidar las alegaciones de las partes. En esencia, cada uno de los autos ante nuestra considera-ción consiste solamente de la petición de certificación, la demanda y los alegatos de las partes. Aún así, el Tribunal no requirió escritos adicionales ni, mucho menos, celebró una vista oral para ofrecerle a las partes su día en corte y para que, a modo de excepción, este Foro recibiera la prueba que ninguna de éstas tuvo la oportunidad de pre-sentar ante el foro de instancia, en una controversia muy compleja que involucra diversos planteamientos y que, sin duda, es de gran trascendencia pública.
Como resultado de la intervención a destiempo por parte de este Tribunal, en su Opinión éste descansó exclu-sivamente en el texto de la propia Ley Núm. 7, supra, y en su Exposición de Motivos para dilucidar y declarar la cons-titucionalidad del estatuto. En otras palabras, ante la au-sencia de un expediente judicial completo en el cual las par-tes hubiesen fundamentado sus posiciones, el Tribunal optó por tomar como hechos las alegaciones del Estado y los da-tos contenidos en la Exposición de Motivos de la Ley Núm. 7, supra, para dirimir la validez de ésta. Ello, sin que los empleados cesanteados hubiesen tenido la oportunidad de presentar prueba en contrario. Tal proceder, además de dar lugar a un razonamiento circular, resulta contrario a lo establecido por el Tribunal Supremo de Estados Unidos en United States Trust Co. v. New Jersey, supra.
En United States Trust Co. v. New Jersey, supra, dicho foro formuló el escrutinio de adjudicación a seguir en casos donde se alega un menoscabo de obligaciones contractuales del Estado. En esencia, para que el Estado prevalezca en estos casos se requiere que el menoscabo de la obligación contractual responda a un interés gubernamental impor-tante y que sea razonable y necesario para alcanzar el in-terés gubernamental involucrado. United States Trust Co. v. New Jersey, supra, pág. 25.
*104 A tales efectos, en Bayrón Toro v. Serra, supra, págs. 620-621, atendimos un reclamo al amparo de la cláusula contra el menoscabo de obligaciones contractuales estable-cida en el Art. II, Sec. 7 de nuestra Constitución, supra, y adoptamos el escrutinio de adjudicación formulado por el Tribunal Supremo de Estados Unidos en United States Trust Co. v. New Jersey, supra. De hecho, en esa ocasión sostuvimos la actuación del Estado por entender que ésta había sido razonable y necesaria. Bayrón Toro v. Serra, supra, pág. 623.
Claro está, en ese caso se dilucidó la validez de la actua-ción cuestionada ante el foro de instancia, el cual contó con un expediente completo que incluía, entre otras cosas, es-tipulaciones de hechos, memorandos de derecho y un in-forme actuarial. Bayrón Toro v. Serra, supra, págs. 609 y 622. Con ello, el Estado cumplió con su obligación de de-mostrar que no hubo un menoscabo de obligaciones con-tractuales que infringiera nuestra Constitución. Id. Véase, además, voto particular del Juez Asociado Señor Alonso Alonso.
En cuanto a la valoración de los elementos de razonabi-lidad y necesidad de una medida impugnada en casos como el de autos, el máximo foro federal resolvió que no procede otorgarle deferencia absoluta al juicio legislativo cuando el propio interés del Estado está enjuego. United States Trust Co. v. New Jersey, supra, pág. 26; Bayrón Toro v. Serra, supra, pág. 620. Lo contrario, razonó el Tribunal Supremo federal, implicaría que la cláusula constitucional contra el menoscabo de las obligaciones contractuales no proveería protección alguna y, en esencia, sería letra muerta. United States Trust Co. v. New Jersey, supra, pág. 26. Por lo tanto, el Estado debe probar en los tribunales que la medida es razonable y necesaria. United States Trust Co. v. New Jersey, supra, pág. 30.
En este sentido, en el referido precedente, el Tribunal Supremo de Estados Unidos dejó claro que “[u]n estado no es completamente libre para considerar menoscabar las *105 obligaciones de sus propios contratos a la par con otras alternativas. Similarmente, un estado no es libre para im-poner un menoscabo drástico cuando una medida evidente y más moderada serviría sus propósitos de la misma forma”. (Traducción y énfasis nuestros.) United States Trust Co. v. New Jersey, supra, pág. 30. Es decir, en estos casos se requiere que el Estado demuestre que no existen medidas menos drásticas. Id. Al así resolver, el Tribunal Supremo federal descartó la alegación del Estado de que la selección de las alternativas disponibles es un asunto de absoluta discreción legislativa. Id.
Opinamos que esta norma cobra mayor relevancia cuando la medida adoptada por el Estado tiene el propósito de resolver una crisis fiscal relacionada con la administra-ción de sus finanzas y su efecto equivale a menoscabar severamente los derechos adquiridos por miles de emplea-dos nombrados de acuerdo con el ordenamiento establecido por la Ley para la Administración de los Recursos Huma-nos en el Servicio Público del Estado Libre Asociado de Puerto Rico, Ley Núm. 184 de 3 de agosto de 2004 (3 L.P.R.A. see. 1461 et seq.), y sus leyes predecesoras. En momentos de crisis fiscal, el Estado tiene la facultad y el deber de diseñar y adoptar mecanismos para solventar sus problemas económicos. Dicha facultad, sin embargo, no es ilimitada. Justamente, la cláusula constitucional contra el menoscabo de las obligaciones contractuales impone un lí-mite a dicho poder.
En el presente caso, el Estado, como parte de las medi-das adoptadas en la Ley Núm. 7, supra, optó por implantar un plan de cesantías de miles de empleados públicos que tienen derechos adquiridos sobre sus puestos. No está en controversia el hecho de que éstos —como empleados del Gobierno— tienen una relación contractual con su patrono —el Estado— establecida al amparo de la legislación apli-cable, y que ésta fue menoscabada severamente. Igual ocu-rre con los empleados públicos que son miembros de unió- *106 nes, pues éstos, representados por sus sindicatos, establecieron una relación contractual con el Estado dis-puesta en los convenios colectivos suscritos de acuerdo con la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, Ley Núm. 45 de 25 de febrero de 1998 (3 L.P.R.A. see. 1451 et seq.).
No obstante, el trámite judicial expedito solicitado por el Estado y autorizado por este Tribunal redundó en los parcos expedientes ante nuestra consideración, lo que nos impide evaluar adecuadamente la constitucionalidad del referido plan de cesantías de la Ley Núm. 7, supra, según los criterios pautados por el Tribunal Supremo federal y por este Foro.
El impedimento es más grave aún al considerar el hecho de que nunca se celebró una vista evidenciaría ante un foro judicial que permitiera al Estado demostrar, según lo re-quiere United States Trust Co. v. New Jersey, supra, que su actuación es necesaria y cumple con los parámetros reque-ridos para validar este tipo de legislación. Es por tal razón, precisamente, que la mayoría del Tribunal se ve obligada a descansar únicamente en la Exposición de Motivos de la Ley Núm. 7 y da por hechos los datos allí contenidos que, a fin de cuentas, sólo constituyen las alegaciones del Estado. De esta manera, el Tribunal realmente otorga completa deferencia al texto de la ley, abdica a su función judicial y, por lo tanto, priva a las partes de un debido proceso de ley, en clara contravención a lo resuelto en United States Trust Co. v. New Jersey, supra.
De acuerdo con nuestra función como máximo foro judicial de Puerto Rico, debemos velar porque se respete, al me-nos, el ámbito mínimo de protección que otorga la cláusula contra el menoscabo de obligaciones contractuales de la Constitución de Estados Unidos, según delimitado en United States Trust Co. v. New Jersey, supra. Contrario a ello, este Tribunal se aparta de esos criterios mínimos e incurre, justamente, en lo que dicha jurisprudencia persigue evitar: *107 descansar ciegamente en la Exposición de Motivos de la ley cuando el propio interés del Estado está enjuego.
A nuestro juicio, la Opinión del Tribunal constituye una invitación al Tribunal Supremo de Estados Unidos para que corrija los errores de este Foro, al igual que lo hizo en El Vocero de Puerto Rico v. Puerto Rico, 508 U.S. 147 (1993). En esa ocasión, el Tribunal Supremo federal revocó el dictamen mayoritario emitido en dicho caso y llegó a las mismas conclusiones que sostuvimos tanto el Juez Aso-ciado Señor Negrón García como este servidor, quienes disentimos entonces. Véase El Vocero de P.R. v. E.L.A., 131 D.P.R. 356, 436 y 440 (1992). El tracto procesal seguido en este caso abre las puertas para que el único foro ahora disponible para los empleados cesanteados intervenga en la controversia y siga un curso de acción igual al de El Vocero de Puerto Rico v. Puerto Rico, supra.
B. De otra parte, nos parece incomprensible la distin-ción que intenta hacer la mayoría de su decisión de otorgar escoltas policiacas vitalicias a los ex gobernadores en Hernández, Romero v. Pol. de P.R., 177 D.P.R. 121 (2009). En esa ocasión, los ex gobernadores reclamaron tener un de-recho adquirido vitalicio al servicio de escoltas policiacas, del cual alegaron no se les podía privar sin la celebración de una vista que cumpliera con las garantías del debido proceso de ley. Este Tribunal les dio la razón y determinó que los ex gobernadores tienen un derecho adquirido que goza de la misma protección que un derecho constitucional. Más importante aún, resolvió que un derecho adquirido “está protegido constitucionalmente frente a cualquier ges-tión gubernamental que pretenda intervenirlo”. (Énfasis suplido.) Hernández, Romero v. Pol. de P.R., supra, pág. 146, Acápite V.
En el caso de autos, sin embargo, este Tribunal resuelve que los empleados públicos de carrera no tienen un derecho adquirido sobre sus empleos. La razón que esboza para lle-gar a dicha conclusión nos resulta, como poco, sorpren- *108 dente: “se encuentra ausente el elemento del amparo de una ley anterior que hubiese concedido tal derecho.” (Enfa-sis en el original.) Opinión del Tribunal, pág. 70. Desafor-tunadamente, al así proceder el Tribunal soslaya las dispo-siciones de la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, las leyes anteriores a ésta y la normativa elaborada en la jurisprudencia de este Foro. El ordena-miento relacionado con el personal de servicio público re-conoce, desde hace más de medio siglo, el principio de mé-rito como el pilar fundamental que rige el sistema de los empleados públicos de carrera en asuntos como su reten-ción en el empleo. No obstante, el Tribunal pasa por alto lo anterior, así como los derechos contenidos en los convenios colectivos suscritos al amparo de la Ley Núm. 45, supra.
Por el contrario, en el caso de las escoltas de los ex go-bernadores no existía disposición legal alguna que expresa-mente les reconociera el derecho que reclamaban. Precisa-mente, por esa razón, éstos solicitaron que se les permitiera demostrar, mediante una vista, que a través de los años habían adquirido ese derecho por la costumbre de la Poli-cía de proveerle el servicio en controversia. Ante esa reali-dad, este Tribunal, sin recibir prueba alguna de las partes, se amparó únicamente en las alegaciones de los ex gober-nadores y en la cuestionada doctrina de re-enactment para reconocer la existencia del derecho vitalicio a escoltas como un derecho adquirido. Es decir, aún ante el silencio legis-lativo, la misma mayoría que hoy emite la Opinión del Tribunal concluyó que los ex gobernadores tenían un derecho adquirido.
Ciertamente, la decisión del caso de las escoltas con-trasta drásticamente con el curso de acción que adopta el Tribunal en el caso de autos. Contrario al reclamo de los ex gobernadores, el de los empleados públicos cesanteados se funda en las disposiciones expresas de un ordenamiento que les garantiza el principio de mérito en el servicio pú- *109 blico y les otorga derechos propietarios. No podemos avalar que ante el reclamo de sus derechos, no sólo adquiridos, sino expresamente conferidos por ley, se adopte un criterio distinto al pautado en el caso de las escoltas de los ex gobernadores.
De acuerdo con lo que sostuvimos en dicho caso, este Tribunal debió haber denegado expedir los recursos de cer-tificación solicitados por el Estado y haber permitido que las partes tuvieran una oportunidad de probar sus alega-ciones en el foro judicial. Al igual que señalamos entonces, el hecho de que se dilucide la controversia ante el foro de instancia no impedirá que ésta se atienda con la premura y el carácter prioritario que requiere un asunto de tan alto interés público como lo es el de autos. Adviértase, además, que dicho trámite ordinario no hubiese afectado el interés del Gobierno en validar los despidos, pues éstos nunca fue-ron paralizados. No obstante, este Tribunal escogió un curso de acción precipitado que eliminó los derechos adqui-ridos de los servidores públicos que tocaron las puertas del foro judicial en busca de nuestra protección.
hH h-1
En fin, aunque somos conscientes de la crisis fiscal que afecta las arcas del Estado y de los esfuerzos que están realizando los poderes constitucionales para atender esta situación, la Opinión que emite el Tribunal en los casos de epígrafe se aparta de las pautas mínimas reconocidas por el Tribunal Supremo de Estados Unidos en cuanto a la cláusula constitucional contra el menoscabo de las obliga-ciones contractuales. Debido al trámite procesal seguido en el presente caso —donde no se celebró tan siquiera una vista evidenciaría— las partes no contaron con un foro donde, mediante informes económicos, testimonios o apor-taciones de peritos o especialistas en la materia, o cual-quier otro mecanismo de prueba, pudiesen exponer sus *110 posiciones. De esa manera se hubiese formado, ante un tercero imparcial, un panorama claro de la situación fiscal que atraviesa el país y se hubiese podido evaluar adecua-damente si, de cara a ésta, la decisión tomada por el Es-tado es la alternativa menos onerosa, según los paráme-tros establecidos en la jurisprudencia federal y estatal.
No haberles provisto a las partes una oportunidad ade-cuada de probar sus puntos de vista y disponer del caso sin el rigor que nos exige una controversia como la de autos, es a todas luces contrario al principio de equidad procesal que debe regir todo proceso judicial. Así, pues, el dictamen de este Tribunal priva a los empleados públicos afectados de sus derechos adquiridos sin tan siquiera haberles provisto un proceso judicial completo y transparente, lo que lamen-tablemente tendrá el efecto de socavar la legitimidad de la decisión de este Tribunal y contribuirá a crear aún más desconfianza sobre la sabiduría y la validez de la acción tomada por el Estado para resolver sus problemas fiscales.
La magnitud del impacto de la Ley Núm. 7, supra, sobre los empleados públicos, la economía y la situación social de Puerto Rico nos requiere ser en extremo rigurosos y cuida-dosos al adjudicar la controversia ante nos. La decisión de la mayoría del Tribunal hoy no sólo echa a un lado los derechos de los empleados públicos, sino que al hacerlo ob-via el procedimiento adecuado y la normativa aplicable es-tablecida tanto por el Tribunal Supremo federal como por este Tribunal. Tratándose del sustento de miles de familias puertorriqueñas, y habiéndole dedicado gran parte de nues-tra vida profesional al servicio público, no podemos tomar tan livianamente nuestra responsabilidad de vindicar los derechos constitucionales de la ciudadanía. Por lo tanto, disentimos.
*111 — O —