Opinión de conformidad emitida por el
Juez Asociado Señor Rivera García.
Una vez más, las actuaciones de las ramas políticas del Gobierno de Puerto Rico amenazaban con transgredir la dignidad de miles de servidores públicos. En esta ocasión, les tocó el turno a nuestras maestras y maestros, con quie-nes el Estado pretendió alterar su relación contractual en un ejercicio desesperado de autopreservación con intereses ulteriores no alineados al bienestar de nuestros educadores. Ante ese escenario, estoy conforme con la de-terminación que esboza esta Curia en la opinión que antecede. Lo contrario sería avalar una acción patente-mente inconstitucional y, como consecuencia de ello, des-amparar a nuestra clase magisterial, condenándola a un futuro de inseguridad económica en el ocaso de su vida productiva.
Los antecedentes fácticos y procesales, así como el dere-cho aplicable a los mismos, están correctamente expuestos en la Opinión del Tribunal. No obstante, me veo precisado a emitir unas breves expresiones en torno a la controversia *886 que nos ocupa con el único objetivo de hacer eco de algunos de los postulados que han regido mi conciencia judicial desde que asumí el cargo como miembro de esta Curia.
HH
En primer lugar, entiendo conveniente resaltar que el problema que el Estado intentó resolver mediante la Ley Núm. 160-2013 era previsible que ocurriera desde el mo-mento en que este entró en su relación contractual con nuestras maestras y maestros. Esto, en la medida en que el propio Estado diseñó un sistema en el cual las aporta-ciones eran mínimas en comparación con los beneficios concedidos. Así lo reconoció la Asamblea Legislativa al es-tablecer en la parte expositiva de la Ley Núm. 160-2013 lo siguiente:
[d]esde sus comienzos al amparo de la Ley Núm. 218 de 6 de mayo de 1951 que creó la Junta de Retiro para Maestros (la cual luego fue sustituida por el actual Sistema), este no contó con las aportaciones adecuadas para mantener un nivel salu-dable de solvencia. El Sistema fue diseñado como un sistema de beneficios definidos cuyas pensiones estaban fijadas por ley y no dependían del monto de las aportaciones que hiciera el Estado como patrono o que hicieran los participantes. La Ley que creó el Sistema estableció un nivel de aportación que no era proporcional a los beneficios que este tenía que pagar y tam poco se ajustaba a los cambios económicos o actuariales que afectaban el nivel de beneficios. (Énfasis suplido).(1)
Adecuadas o no, esas fueron las circunstancias en las que el Estado, desde sus inicios, asumió su obligación para con nuestros educadores. Por lo tanto, la situación de in-solvencia que hoy enfrenta el Sistema de Retiro para Maestros (“Sistema de Retiro” o “Sistema”) no debe ser sor-presa para nadie. Claro está, con el pasar de los años ha empeorado la situación financiera del Sistema, pero ello *887 solo ha constituido un cambio en el grado o magnitud del problema, no en su tipo. Es decir, el problema del Sistema de Retiro fue desde el principio y continúa siendo de carác-ter financiero, pero indudablemente en un grado mayor.
Ahora bien, la previsibilidad del problema no debe to-marse como una invitación a la inacción. Nada impide que el Poder Legislativo y Ejecutivo tomen medidas para refor-mar esta situación. Empero, en ese proceder la primera alternativa no debe ser el menoscabo de la obligación asumida. Máxime, cuando por años el Estado ha tenido conocimiento de la raíz del problema de solvencia que en-frenta el Sistema de Retiro y, a pesar de ello, ha optado por asumir una actitud languideciente y dormir el “sueño de los justos”.
Tanto el voto de conformidad que hoy emito, como estas breves expresiones, no deben tomarse como un cuestiona-miento a las prerrogativas constitucionales de las dos ra-mas hermanas de gobierno. Sin lugar a dudas, la Asamblea Legislativa tiene la facultad de promulgar o enmendar las leyes que entienda pertinentes, incluyendo la legislación que estableció la Ley del Sistema de Retiro para Maestros del Estado Libre Asociado de Puerto Rico. De igual forma, reconozco la facultad del Gobernador de poner en vigor tales legislaciones y sus respectivas políticas públicas.
Sin embargo, tanto el Poder Legislativo como el Poder Ejecutivo tienen la obligación de circunscribir sus acciones a los contornos constitucionales que rigen nuestro ordena-miento, particularmente en momentos de “crisis” o “emergencia”. Más bien es en tales escenarios, precisa-mente, en los que las dos ramas políticas deben ser más cautelosas y los tribunales más rigurosos en su evaluación. La existencia de una “crisis” o “emergencia” no debe to-marse como pretexto para actuar al margen de nuestra Constitución. Así, estas situaciones no deben constituir puertas de escape que se abran para permitir el trastoque de los principios más básicos que por décadas han regido en nuestro Pueblo.
*888 Recientemente, en una situación similar de “crisis”, expresé mi categórico rechazo a los cambios realizados al Plan de Retiro de los Empleados del Gobierno de Puerto Rico. Véase Trinidad Hernández et al. v. ELA et al., 188 DPR 828, 859 (2013), opinión disidente del Juez Asociado Señor Rivera García. En aquella ocasión, carente de un expediente con prueba que apoyara las posiciones de am-bas partes, consigné que las reformas realizadas al mencionado sistema mediante la Ley Núm. 3-2013 eran irrazo-nables, por lo que arrojaban fuertes visos de inconstitucionalidad. Id., págs. 894-895.
Hoy, consecuente con esa postura y como custodio de la Constitución de Puerto Rico, reafirmo mi conformidad con la determinación alcanzada por la mayoría de este Tribunal. Así, estoy conforme con decretar la inconstitucio-nalidad de toda parte de la Ley Núm. 160-2013 que altere el derecho contractual que tienen los peticionarios sobre su pensión de retiro. Asimismo, comparto el criterio mayori-tario sobre la constitucionalidad de la derogación de las leyes especiales que concedían beneficios adicionales a nuestras maestras y maestros, pero que no forman parte de su pensión. De igual forma, estoy conteste con la deter-minación de que los participantes que entraron a cotizar al Sistema de Retiro luego de la aprobación de la Ley Núm. 160-2013, solo tienen derecho a la pensión establecida en la referida legislación.
En este punto, entiendo pertinente resaltar que nuestra evaluación del presente caso estuvo enmarcada en dos aspectos importantes. Primero, en las estipulaciones hechas por el Estado, a saber: (1) que los maestros tienen un con-trato válido con el Gobierno de Puerto Rico, y (2) que las reformas introducidas a su sistema de retiro constituyeron un menoscabo sustancial al referido contrato. Segundo, como hemos reconocido en el pasado, que la adopción de medidas dirigidas a adelantar la solvencia económica de un sistema de retiro constituye un interés importante para el Estado. Véanse: Trinidad Hernández et al. v. ELA et al., supra, pág. 837; Bayrón Toro v. Serra, 119 DPR 605 (1987). *889 En vista de estos dos aspectos, la evaluación de este Tribunal se limitó, inicialmente, a indagar si la evidencia pre-sentada por la parte peticionaria demandante demostraba que las reformas adoptadas no eran razonables, ni necesarias.(2)
Con ese objetivo como norte, evaluamos cada uno de los documentos presentados por la parte demandante, particu-larmente el informe de los peritos economistas suministra-dos por la Asociación de Maestros y el informe del actuario José M. Pérez Díaz presentado por la Organización de Directores Escolares de Puerto Rico. Como bien surge de la opinión que antecede, ambos informes demuestran el im-pacto negativo que tendría el retiro súbito de miles de edu-cadores sobre la solvencia del Sistema de Retiro. Esto, ante el hecho incuestionable de que habría un aumento en la nómina de pensiones y una disminución en las aporta-ciones. Siendo así, las medidas adoptadas en vez de solven-tar el Sistema de Retiro, lo colocan en una posición de mayor precariedad. No hallamos en el expediente del caso una sola prueba que demuestre lo contrario.
Bajo ninguna circunstancia pretendemos realizar una determinación de novo sobre la viabilidad de otras alterna-tivas que pudieran atender el problema de solvencia que enfrenta el Sistema de Retiro y que, a su vez, aseguren que el Estado honre sus acuerdos contractuales. Lo que hoy la opinión de esta Curia plantea es que la alternativa selec-cionada por el Estado no cumple su objetivo, según demos-traron los demandantes y según surge, incluso, de la pro-pia prueba presentada por el Estado y por las declara- *890 dones ofrecidas en la vista oral por vía de sus representantes legales. En la medida en que la legislación adoptada no cumple con su objetivo, y, estipulado por am-bas partes el menoscabo sustancial en las obligaciones con-tractuales de los peticionarios, esta se torna irrazonable y no amerita que entremos a evaluar su necesidad. Ello sin mencionar que el inminente retiro súbito de miles de maestros afectaría el derecho constitucional a la educación que gozan nuestras niñas y niños. Véase Art. II, Sec. 5, Const. ELA, LPRA, Tomo 1. Ante ello, estoy de acuerdo con la determinación de esta Curia de decretar la inconstitu-cionalidad de la Ley Núm. 160-2013, conforme a lo especi-ficado en la opinión que antecede.
De esta manera, hoy reafirmo con vehemencia que los jueces somos árbitros que debemos cantar las jugadas se-gún las vemos, no como otros pretenden que las veamos. Por lo que siempre debemos estar ávidos a escuchar las posturas que le planteen las partes en un pleito y adjudicar con plena honestidad intelectual conforme a la ley, el dere-cho y la justicia. El éxito en las decisiones económicas que se pretendan implantar bajo el palio del bienestar común jamás debe ser pretexto para atropellar al ser humano y, menos aún, menospreciar su dignidad.

 Véase Exposición de Motivos de la Ley Núm. 160-2013, 17ma Asamblea Legislativa, 2da Sesión Legislativa Extraordinaria, pág. 5.

 Ello conforme al estándar adoptado por una mayoría de los miembros de este Tribunal en Trinidad Hernández et al. v. ELA et al., 188 DPR 828, 838 (2013), en el cual se estableció que la parte demandante tiene el peso de probar que la medida impugnada es irrazonable e innecesaria. Aunque difiero sobre este particular, ya que entiendo que ante la existencia de un menoscabo sustancial es el Estado quien tiene el peso de la prueba de demostrar que las medidas impugnadas son razonables y necesarias —véase Trinidad Hernández et al. v. ELA et al., supra, pág. 859, opinión disidente del Juez Asociado Señor Rivera García)— reconozco que, al presente, la norma corresponde a la establecida en Trinidad Hernández et al. v. ELA et al., supra. Siendo así, acojo como correcto el análisis expuesto en la opinión mayoritaria por ser la norma que impera hoy.