# 2003 DTA 128

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL I DE SAN JUAN**
**PANEL I**

JORGE SANTINI HERNANDEZ, JAVIER NORIEGA Y MARIANNE SANTINI;
GLORIMAR SANTINI Y EDGAR MORELL
Recurrentes

v.

VALLES DE GUAYNABO, S.E., CM REALTY GROUP, INC.
Recurridos

Núm. KLRA-02-00453

San Juan, Puerto Rico, a 31 de julio de 2003

Panel integrado por su Presidenta, la Juez Fiol Matta,
y los Jueces González Rivera y Rivera Martínez

Rivera Martínez, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

Jorge Santini Hernández, Javier Noriega y Marianne Santini, parte recurrente en el caso de autos, presentaron el 21 de junio de 2002 solicitud de revisión de decisión administrativa. Mediante dicho recurso, la parte recurrente solicita la revisión de la resolución dictada y notificada el 31 de mayo de 2002 por el Departamento de Asuntos del Consumidor en el caso *Jorge Santini Hernández, Marianne Hernández y Javier Noriega Costas, Glorimar Santini Hernández y Edgar Morell Hernández v. Valles de Guaynabo, S.E. y C.M. Realty Group, Inc.,* Querellas Núm. 10001477, 100014181 y 100014189 (consolidadas).

Mediante resolución dictada el 30 de septiembre de 2002, este Tribunal desestimó el recurso en cuanto a Glorimar Santini Hernández y Edgar Morell Hernández.

En síntesis, los recurrentes alegan en su recurso que el Departamento de Asuntos al Consumidor (en adelante DACO) erró al desestimar las querellas número 100010199 y 100014181 y determinar que por haber un negocio ya consumado entre dos partes privadas, no procedía la devolución del pago hecho a CM Realty Group, Inc. (en lo sucesivo CM), por concepto de comisión de corredor de bienes raíces.

Luego de ponderar los escritos presentados por las partes, así como las controversias envueltas en el caso de autos, resolvemos denegar la resolución recurrida.

### I

Valles de Guaynabo, S.E. (en adelante Valles de Guaynabo), es la desarrolladora de un proyecto de vivienda conocido como *"Valles de Torrimar"* (el *"Proyecto"*), localizado en el Municipio de Guaynabo CM, Realty Group, Inc. (*"CM"*) es la corredora de bienes raíces contratada por Valles de Guaynabo para la venta de los apartamentos en el Proyecto. Los señores Jorge Santini Hernández y los esposos Marianne Santini Hernández y Javier Noriega Costas, son dueños respectivamente de los apartamentos E-209 y E-109 del referido proyecto.

El 24 de agosto de 2001, los recurrentes Javier Noriega Costas y Eva Marianne Santini Hernández adquirieron su apartamento E-109 como consecuencia de un Contrato de Compraventa de Propiedad Horizontal otorgado por la vendedora Valles de Guaynabo, mediante la escritura número 85. De igual forma, el recurrente Jorge Santini Hernández adquirió su apartamento E-209 mediante escritura número 86 con su vendedora Valles de Guaynabo el 24 de mayo de 2001, como consecuencia de un contrato de compraventa que otorgaran el 2 de mayo de 2000.

Es preciso señalar con respecto a la controversia que hoy nos toca resolver, que ambos contratos de compraventa aludidos contenían la siguiente cláusula contractual:

*"29. EL COMPRADOR se compromete a pagar una participación equivalente al uno y medio por ciento (1½ %) del precio de venta de la unidad por concepto de la comisión de venta del corredor. Esta comisión esta*

*estipulada dentro de los gastos de cierre detallados en el anejo "A" que forma parte de este contrato."*

Según se alega en el *"Estimado de Gastos"* que forma parte de los referidos contratos, se estima esta partida en la cantidad de $2,145 para el caso de los esposos Marianne Santini Hernández y Javier Noriega Costas y en el caso de Jorge Santini dicha cantidad se estima en $2,025.

El precio de las unidades fue de $144,000 para el E-109 y $135,000 para el E-209. Con el objetivo de separar las unidades, se entregaron cinco mil dólares ($5,000) por unidad al momento de la firma de los respectivos contratos de compraventa.

El contrato de compraventa de propiedad horizontal firmado por los recurrentes es reglamentado por el DACO a tenor con lo dispuesto por la Ley Número 130 del 13 de junio de 1967, 17 L.P.R.A. sec. 501 y ss., y el *"Reglamento para Regular las distintas Actividades que se llevan Acabo en el Negocio de la Construcción de Viviendas Privadas en Puerto Rico"*, promulgado por el DACO al amparo de la misma el 17 de agosto de 1977, 10 L.P.R.A. sec. 250.190 y ss. Entre otras, dicha reglamentación prescribe las cláusulas contractuales que debe contener dicho contrato y exige que el contrato a utilizarse sea sometido previamente a! DACO para su aprobación. A tenor con la reglamentación vigente, el DACO había prescrito el contenido de dicho contrato, haciendo formar parte del Reglamento un modelo uniforme para el mismo. Según se desprende en el caso de autos, el *"Contrato de Compraventa de Propiedad Horizontal"* que firmaran los recurrentes fue sometido al DACO y aprobado por éste el 24 de junio de 1999.

El 26 de julio de 2001, Jorge Luis Santini Hernández, Marianne Santini Hernández y Javier Noriega Costas, advinieron como parte compradora en el contrato de compraventa de Valles de Torrimar, ya que los contratos firmados el 2 de mayo de 2000 y el 19 de septiembre de 2000 fueron transferidos a éstos por sus padres, Gloria M. Hernández y Jorge Luis Santini Morales.

Así las cosas, el 24 de agosto de 2001, en horas de la mañana, los aquí recurrentes presentaron querella ante el DACO contra Valles de Guaynabo, S.E. y CM Realty Group, Inc. Según se alega, el propósito de la querella fue promover la impugnación de la cláusula 29 del contrato de compraventa. Dicha cláusula trata sobre los servicios de *"realtor"* que según alegan, arbitrariamente, Valles de Guaynabo, S.E. impuso a los compradores. De esa forma, se impugnó la validez, legalidad y aplicación de la cláusula 29 del contrato del contrato de compraventa.

Como mencionáramos, el mismo día que presentaron la querella, se otorgaron las escrituras de compraventa para las unidades E-109 E-209.

Hasta el mes de noviembre de 2001, el DACO asumió la posición de que entre los gastos relacionados a la compraventa que bajo dicho contrato se podían traspasar al comprador, se encontraba hasta el 1½% del precio de venta de la unidad como comisión del corredor de bienes raíces que interviniera en la transacción. Hasta esa fecha, la comisión del corredor de bienes raíces, el desarrollador podía cobrarla aparte conforme el contrato de compraventa aprobado por ellos o incluirla dentro del precio de venta porque el efecto era el mismo en ambos casos, es decir, se le traspasa la carga económica al consumidor. No obstante, el 13 de noviembre de 2001 y en ocasión de la querella presentada por los señores *Wanda de León Ramos y Carlos Heredia v. Valles de Guaynabo,* querella número 10014061, el DACO decretó la nulidad de la cláusula que nos ocupa al encontrarla contraria a los propósitos de la Ley Núm. 130, antes citada, y ordenó a Valles de Guaynabo a que **prospectivamente** desistiera de solicitar en sus contratos el pago de dicha comisión a los querellantes, así como a cualquier futuro comprador. La parte querellada en el caso de *Wanda de León* no solicitó reconsideración ni tampoco apeló la Resolución dictada, por lo que la misma es final y firme.

Posteriormente, el 31 de mayo de 2002, el DACO emitió y notificó una resolución en el caso de Jorge

Santini Hernández, Marianne Santini Hernández y Javier Noriega Costas, Glorimar Santini Hernández y Edgar Morell Rivera, querellas número 100014177, 100014181, 100014189 (consolidadas). En las querellas que nos ocupan, sin embargo, el DACO se negó a variar el carácter prospectivo de la resolución que dictara en el caso de *Wanda de León* anteriormente citado y validó la obligación contractual que asumieran los aquí recurrentes. Al así hacerlo, el DACO consideró el efecto que tendría el trastocar relaciones contractuales ya consumadas y establecidas a tenor con un ordenamiento jurídico anterior.

Inconformes con dicho dictamen, la parte querellante presentó antes nos revisión de decisión administrativa, haciendo tres señalamientos de error alegadamente cometidos por DACO, a saber: (1) que erró el DACO al desestimar las querellas habiendo ya una resolución final que decretaba la nulidad de la cláusula 29 del Contrato de Compraventa; (2) que erró al interpretar erróneamente el concepto del menoscabo de obligaciones contractuales en su aplicación al caso de epígrafe, y (3) que erró el DACO al desestimar las querellas presentadas en cuanto a la solicitud de los querellantes para que se les devuelva el importe de las comisiones de corredor de bienes raíces pagadas por éstos a tenor con la cláusula 29 del contrato de compraventa.

## II

Considerados estos hechos, el DACO expuso su razonamiento de decisión en las siguientes conclusiones de derecho: Son de aplicación al presente caso las disposiciones de la Ley Núm. 130 de 13 de junio de 1967, según enmendada, y del Reglamento emitido a su amparo, en vigor desde el 16 de septiembre de 1977, 10 R.P.R. sec. 250, 1901 y ss. También son de aplicación al mismo la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, el Artículo 3 del Código Civil, las disposiciones relativas a las obligaciones y contratos contenidas en dicho Código y la jurisprudencia interpretativa de las mismas.

En Puerto Rico existe una clara política pública en proteger y fomentar en que cada familia tenga acceso a una vivienda cómoda, segura y accesible. Ejemplo de lo anterior es la Ley Núm. 130 de 13 de junio de 1967, antes citada, actualmente bajo la égida del Departamento (la Ley 130), y el *"Reglamento para Regular las Distintas Actividades que se Llevan a Cabo en el Negociado de la Construcción de Viviendas Privadas en Puerto Rico"*, promulgado por el Departamento a tenor con la misma (el Reglamento). Mediante los mismos, se intenta proteger los intereses de los compradores de viviendas privadas en Puerto Rico, en el reconocimiento de que, por lo general, el consumidor es la parte más débil en dicha transacción.

En persecución de dicho propósito, tanto la sección 10 de la Ley antes citada, 17 L.P.R.A. § 510, como las Secciones 14 a 17 del Reglamento, 10 L.P.R.A. sec. 250.1915 18, facultan a este Departamento a prescribir los términos que contendrán los contratos de compraventa para vivienda privada. De tal forma, mediante ley y reglamentación, se restringe la libertad de contratación enunciada en el Art. 1207, antes citado, al considerar el Estado que esta relación jurídica reviste de tanto interés público, que se hace necesario prescribir sus términos suplantando lo que de otra forma sería la voluntad de las partes.

A tenor con dichas autorizaciones, el Departamento ha preescrito el contenido de dicho contrato, haciendo formar parte del Reglamento un modelo uniforme para el mismo. Cualquier desviación de dicho modelo requiere la previa evaluación y aprobación por el Departamento. Recientemente en el caso de *Wanda de León Ramos Carlos Heredia v. Valles de Guaynabo*, antes citado, el Departamento decretó la nulidad de la cláusula impugnada al encontrarla contraria a los propósitos de la Ley Núm. 130 de 13 de junio de 1967, según enmendada. A juicio del Departamento, la inclusión de esta cláusula en los contratos de compraventa comprende una práctica contraria a las disposiciones legales antes citadas al crear confusión en cuanto a cuál es el precio real de la propiedad. A pesar de que al incluir dicha cláusula en el contrato el desarrollador había actuado a base con las autorizaciones que le había concedido este Departamento, y a tenor con la autoridad que le concede la jurisprudencia para rectificar sus propios errores, (véase *Magriz Rodríguez v. Empresas Nativas*, 143 D.P.R. 63 (1997)), ordenó al desarrollador para que prospectivamente cesara en dicha práctica, e incluyera

de ahora en adelante la comisión del corredor dentro del precio de venta de las unidades.

La presente querella es secuela de la querella antes citada; sin embargo, existe una diferencia entre aquélla y la que nos ocupa. En la presente querella se solicita del Departamento que intervenga en transacciones jurídicas ya consumadas con el fin de alterar las mismas. Es preciso señalar que en la querella de De León y Heredia, la compraventa no había sido consumada. Las querellas que nos ocupan contienen, pues, una consideración que no estuvo presente en la de Heredia.

## III

Por entender que los errores señalados por los recurrentes se encuentran íntimamente relacionados, procederemos a discutirlos conjuntamente.

El día 13 de noviembre de 2001, el DACO dictó una resolución final en caso de *Wanda de León y Carlos Heredia,* anteriormente citado, en la que decretó la nulidad de la cláusula 29 del contrato de compraventa del complejo de viviendas Valles de Torrimar debido a que la mencionada cláusula era contraria a los propósitos de la Ley Núm. 130 del 13 de junio de 1967. Asimismo, el DACO dispuso en el referido caso que dicha determinación tiene efectos prospectivos.

El argumento de los recurrentes en el caso de autos es, en esencia, que habiendo decretado el DACO en la querella presentada por Wanda de León la nulidad de la citada cláusula 29, se convierte en inexistente la misma no tan sólo para el caso de *Wanda de León Ramos*, sino para todos los contratos otorgados por Valles de Guaynabo que contengan la misma. No les asiste la razón, veamos.

Primero que todo, es preciso señalar que en el caso de *Wanda de León, supra*, los peticionarios Wanda de León y su esposo Carlos Heredia presentaron la querella ante el DACO y no comparecieron al cierre de la unidad del condominio de Valles de Torrimar hasta tanto la misma no fue resuelta. En el caso que nos ocupa, los querellantes comparecieron al cierre de sus unidades y allí informaron al notario de la presentación de la querella por el cargo que realizaba CM como parte de dicha transacción. No obstante, aceptaron y ratificaron el pago de la comisión del corredor de bienes raíces y autorizaron a la institución financiera a que procediera al pago en su nombre.

La libertad de contratación es un principio general de derecho en nuestra jurisdicción. Sin embargo, dicha libertad no es irrestricta. A tales efectos, el Artículo 1207 de nuestro Código Civil de Puerto Rico, 30 L.P.R.A. § 3372, dispone el que *"los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, a la moral, ni al orden público"*. De tal forma, el propio artículo atempera dicha libertad supeditándola a lo que constituya el interés apremiante del Estado.

La protección de las relaciones contractuales existentes tiene rango constitucional en nuestra jurisdicción. Existe también un interés público en proteger la certeza de las consecuencias legales de lo pactado, principio que en su más mínima expresión, constituye la base en que se fundamenta nuestra sociedad. A tales efectos, la Sección 7 del Artículo 2 de nuestra Constitución dispone que no se aprobarán leyes que menoscaben las obligaciones contractuales. Constitución del Estado Libre Asociado de Puerto Rico, Artículo II, Sección 7 (1952). Por su parte, el Artículo 3 de nuestro código Civil dispone que en ningún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior. La reglamentación por el Departamento del contenido y forma de los contratos de compraventa tiene la fuerza y efecto de una ley.

Nuestro Tribunal Supremo en el caso de *Warner Lambert Co. v. Tribunal Superior*, 101 D.P.R. 378 (1973), a la pág. 395, expuso que:

*"La certeza en las consecuencias legales de lo pactado constituye el fundamento racional en que se basa la garantía contra el menoscabo de las obligaciones contractuales. En principio, la ley no debe modificar esas consecuencias en perjuicio de uno de los contratantes. Las partes así lo confían. La estabilidad en las relaciones contractuales es un valor social que requiere protección en el ordenamiento jurídico. Por supuesto, como ya expresamos, por razones superiores de orden público, esta protección puede quedar subordinada al poder de reglamentación del Estado. Cf. El Paso v. Simmons, 379 U.S. 497, 506."*

Más adelante, en el anterior citado caso, a las págs. 395 y 396, nos indica el Tribunal Supremo que el criterio a utilizarse para determinar si un estatuto es válido bajo la cláusula de menoscabo, es el de razonabilidad. Nos señala el Tribunal Supremo lo siguiente:

*"Al considerar la validez de estatutos bajo la cláusula de menoscabo, el criterio aplicable es el de razonabilidad. **La función del tribunal consiste en establecer un balance razonable entre el interés social de promover el bien común y el interés, también social, de proteger las transacciones contractuales contra la aplicación arbitraria e irrazonable de las leyes.** Esencialmente, es una cuestión de debido procedimiento de ley. A este respecto se ha sostenido que los criterios de razonabilidad para determinar la validez de la acción legislativa son los mismos, bien bajo la garantía del debido procedimiento de ley como bajo la garantía contra el menoscabo de las obligaciones contractuales. Por consecuencia, aunque no existiera la garantía contra el menoscabo de las obligaciones- como no existe en cuanto al Congreso, ya que la prohibición del Art. I, Sec. 10, va dirigida a los estados exclusivamente-, siempre podría llegarse al mismo resultado aplicando la cláusula del debido procedimiento de ley."* S. Lawson, *Constitutional and Legislative Considerations in Retroactive Lawmaking*, 48 Calif. L. Rev. 216; Hale, *The Supreme Court and the Contract Clause*, 57 Harv. L. Rev. 852, 890; Comentario, 32 Mich. L. Rev. 71. Como casos ilustrativos en los cuales se ha aplicado el mismo criterio, puede verse en *Block v. Hirsh,* 256 U.S. 135, y *Marcus Brown Co. v. Feldman,* 256, U.S. 170. Ambos casos sostuvieron la constitucionalidad de la aplicación de un estatuto de control de alquileres a los contratos existentes; uno, bajo la cláusula del debido procedimiento de ley; y el otro, bajo la cláusula contra el menoscabo de las obligaciones contractuales.

La razonabilidad del estatuto se determina tomando en consideración principalmente la sustancialidad del interés público promovido por el mismo y la dimensión del menoscabo ocasionado por su aplicación retroactiva. Véanse: *Home Building & Loan Association v. Blaisdell,* 290 U.S. 398; Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv. L. Rev. 701.

El Tribunal Supremo de Puerto Rico en el caso de *Bayrón Toro v. Serra,* 119 D.P.R. 605 (1987), se expresó a los efectos de que *"[a]l analizar la posibilidad de que exista un menoscabo de obligaciones contractuales, según prohibido por nuestra Constitución, Art. II, Sec. 7, debemos tener presente que las decisiones del Tribunal Supremo federal interpretan la cláusula análoga de la Constitución federal, Art. I, Sec. 10, constituyen el mínimo que estamos obligados a reconocerle en nuestro ordenamiento."*

Asimismo, el caso de *Bayrón Toro, supra,* en las páginas 691 y 620, dispone que *"[n]o todo menoscabo contractual contraviene la prohibición constitucional." Paso v. Simmons,* 379 U.S. 497, 506-507 (1965); *United States Trust Co. v. New Jersey,* 431 U.S. 1, 16 (1977). R. Law: *Substance and Procedure*, Minesota, West Pub. Co., 1986, Sec. 15.8.

*"Al considerar la validez de estatutos bajo la cláusula de menoscabo, el criterio aplicable es el de razonabilidad. La función del tribunal consiste en establecer un balance razonable entre el interés social, de proteger las transacciones contractuales contra la aplicación arbitraria e irrazonable de las leyes." Warner Lambert Co. v. Tribunal Superior, supra,* pág. 395.

Esta cláusula limita el poder del Estado para interferir tanto con la contratación privada como con la suya

propia. *Fletcher v. Peck*, 6 Cranch 87, 137-139 (1810); *Darmouth College v. Woodward, supra; United States Trust Co. v. New Jersey, supra*, pág. 17; Epstein, *supra*, págs. 718-719. Cuando nos confrontamos con la situación en que el Estado modifica sus propias obligaciones, el escrutinio judicial debe ser más cuidadoso para asegurar que la actuación del Estado no sólo sea en beneficio propio. *United States Trust Co. v. New Jersey, supra*, págs. 25-26; Nota, *Rediscovering the Contract Clause*, 97 Harv. L. Rev. 1414, 1417 (1984). En estos casos, la modificación, además de ser razonable, debe ser también necesaria para adelantar un propósito gubernamental importante. *United States Trust Co. v. New Jersey, supra*, pág. 29.

Al evaluar, pues, una modificación a una obligación del Gobierno, debemos determinar en primer lugar si estamos ante una obligación contractual protegida por la Constitución. En segundo lugar, es preciso que la modificación de la obligación en efecto constituya un menoscabo de una obligación contractual. Una vez determinado que existe un menoscabo, entonces debemos precisar si el mismo viola la garantía constitucional. *United States Trust Co. v. New Jersey, supra*. Si éste surge como consecuencia de una modificación razonable y necesaria dirigida a adelantar un interés público, sostenemos su validez. *Warner Lambert Co. v. Tribunal Superior, supra; United States Trust Co. v. New Jersey, supra*.

Como es conocido, los tribunales no intervendrán con las determinaciones de hechos de un organismo administrativo si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Metropolitana, S.E. v. A.R.P.E.*, 138 D.P.R. 200, 213 (1995); *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 D.P.R. 521 (1993); *Asoc. Drs. Med. Cuid. Salud v. Morales*, 132 D.P.R. 567 (1993).

Para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial, es necesario que la parte afectada demuestre que existe "*otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la ... prueba presentada ... y hasta el punto que se demuestre claramente que la decisión (del organismo administrativo) no está justificada por una evaluación justa del peso de la prueba*" que tuvo ante su consideración. *Hilton Hotels v. Junta de Salario Mínimo*, 74 D.P.R. 670, 686 (1953).

Por otro lado, las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto. *Murphy Bernabé v. Tribunal Superior*, 103 D.P.R. 692, 699 (1975). Por esta razón y de ordinario, los tribunales apelativos deben ser cautelosos al intervenir con dichas determinaciones. *Fuertes y otros v. A.R.P.E.*, 134 D.P.R. 947 (1993); *Viajes Gallardo v. Clavell*, 131 D.P.R. 275 (1992), res. el 30 de junio de 1992.

Las decisiones administrativas gozan de una presunción de regularidad y corrección y nuestra intervención con las mismas está limitada por la ley y la jurisprudencia. Ley Núm. 170 del 12 de agosto de 1988, conocida como Ley de Procedimiento Administrativo Uniforme (LPAU), 3 L.P.R.A. sec. 2174 *et seq.; Misión Ind. P.R. v. J.P.*, 146 D.P.R. 64 (1998); *Misión Ind. P.R. v. J.P., y A.A.A.*, 142 D.P.R. 656 (1997); *Maisonet v. F.S.E.*, 142 D.P.R. 194 (1996); *Fac. Soc., Inc. v. C.E.S.*, 133 D.P.R. 521, 532-533 (1993); *Henríquez v. C.E.S.*, 120 D.P.R. 194, 210 (1987); *Murphy Bernabé v. T. Superior*, 103 D.P.R. 692, 699 (1975).

En armonía con lo anterior, las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto, por lo que en el ejercicio de nuestra función revisora está limitado a determinar si la agencia actuó arbitraria, ilegal o tan irrazonablemente que su actuación constituyó un abuso de discreción. *Misión Ind. P.R. v. J.P., supra*, a la pág. 1160 (1998); *Misión Ind. P.R. v. A.A.A., supra; Reyes Vda. de Morales v. Policía de P.R.*, 142 D.P.R. 180 (1997); *Fac. Soc. Inc. v. C.E.S., ante; Fuertes y otros v. A.R.P.E.*, 134 D.P.R. 947, 953 (1953); *Murphy Bernabé v. Tribunal Superior, supra*. Se cumple cuando se encuentra una base racional en el récord administrativo para las conclusiones de la agencia, sin sustituir el

criterio del tribunal por el de la agencia administrativa. *Misión Ind. P.R. v. J.P., supra; Metropolitana, S.E. v. A. R.P.E.,* 138 D.P.R. 200 (1995); *Hilton Hotels Intl. v. Junta de Salario Mínimo,* 74 D.P.R. 670, 703 (1953).

Lo anterior impone en quien impugna la decisión administrativa, el deber de probar que se ha actuado en forma arbitraria, caprichosa o en clara violación de los derechos constitucionales fundamentales. Por ello, le corresponde el peso de establecer en su recurso que no existe base racional que sostenga la decisión administrativa que es objeto de impugnación. *Catalytic Ind. Mant. Co. v. F.S.E.,* 121 D.P.R. 98, 102 (1988); *Henríquez v. Consejo de Educación Superior, supra.*

A nuestro juicio, los recurrentes no han justificado que intervengamos con la resolución recurrida y, menos aún, que la revoquemos.

**IV**

Por todos los fundamentos antes expuestos, se deniega la expedición del auto solicitado.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General