*98 Voto particular de conformidad emitido por el
Juez Aso-ciado Señor Kolthoff Caraballo.
Son varios los intereses de los maestros que se protegen con nuestra orden de paralización. Como muy bien señala la Resolución de la mayoría de este Tribunal, con nuestra paralización “los miles de maestros que se ven afectados por la [ley en controversia] no tienen [ahora] el dilema de tener que tomar decisiones permanentes acerca de su fu-turo con la presión de aplicación inminente de la ley”. Re-solución, pág. 91. Además, y como también señala la men-cionada Resolución, los maestros presentan alegaciones serias y sustanciales en reclamo de derechos reconocidos expresamente por nuestra Constitución.
Por otro lado, y además de lo anterior, nuestra orden de paralización ha conseguido apaciguar los ánimos y traer un poco de sosiego y calma a nuestro País. El ambiente de conflicto y controversia suscitado en medio de la aproba-ción a toda prisa del estatuto, ya había maculado las efe-mérides navideñas y amenazaba con interrumpir el inicio del semestre escolar. Tal es el efecto positivo que ha tenido nuestra orden de paralización en la atmósfera de este con-flicto que ello sin duda ha contribuido a un mejor ambiente en el llamado Comité de Diálogo nombrado por el señor Gobernador.
Sin embargo, no es todo esto lo que me motiva a escribir este Voto particular de conformidad. Me explico.
En mi Opinión disidente en el caso sobre el retiro de los empleados públicos según dispuesto en la Ley Núm. 3-2013, Trinidad Hernández et al. v. ELA et al., 188 DPR 828, 846 (2013), advertí que el Estado había convertido el sistema de retiro de estos más de 100 mil servidores públicos en una contradicción de términos: “un plan de retiro con el cual jamás podrá[n] retirarse”. (Enfasis suprimido). *99 En muchos aspectos el caso que ahora nos ocupa, de su faz y sujeto a la prueba que en su día se presente ante el Co-misionado Especial, aparenta ser similar a Trinidad Hernández et al. v. ELA et al., supra. En ese sentido, los de-mandantes tienen una alta probabilidad de prevalecer.
Sin embargo, con todo respeto, lo que asombra es que el apreciado Juez Presidente de esta Curia y la apreciada compañera Jueza Asociada Señora Fiol Matta le imputen a la mayoría de este Tribunal inconsistencia al paralizar el presente caso. Y es que resulta difícil entender cómo pue-den hablar de inconsistencia aquellos que en tiempos de la notoria Ley 7 argumentaron con vehemencia en favor de los servidores públicos, pero los abandonaron sin explica-ción alguna en el caso de la Ley Núm. 3-2013 sobre el retiro de los empleados públicos. Tal acción resulta tan contradictoria como “pensar que alguien te necesita en tiempo de tormenta y creer que no es lo mismo en tiempo de huracán”.
Por haber sido el Juez ponente en el caso de la Ley 7 —Domínguez Castro et al. v. E.L.A. I, 178 DPR 1 (2010), cert. denegado, 131 S.Ct. 152 (2010)—, en Trinidad Hernández et al. v. ELA et al., supra, expuse la clara diferencia entre un caso y el otro: sencillamente los intereses constitucionales protegidos son distintos. En Domínguez Castro et al. v. E.L.A. I, supra (Ley Núm. 7), la controversia giraba en torno al derecho procesal, derecho sustantivo y el menoscabo temporal —con fecha cierta y razonable de finalización— de convenios colectivos. Mientras, Trinidad Hernández et al. v. ELA et al., supra (Ley Núm. 3-2013), conllevó la violación de la cláusula constitucional de no menoscabo de obligaciones contractuales por parte del propio Estado, al reducir las anualidades de las pensiones de los servidores públicos de forma sustancial y permanente. En palabras sencillas, no es lo mismo perder el trabajo que *100 perder la pensión. Como cité en Trinidad Hernández y en ese contexto: salarios y pensiones no son sinónimos.(1)
Ciertamente, en Domínguez Castro et al. v. E.L.A. I, supra, este Tribunal —por voz del que suscribe— afirmó el sacrificio que en ocasiones han de hacer “los pocos por el bien de los muchos”. Sin embargo, no es lo mismo cuando los pocos se quedan sin trabajo que cuando los muchos se quedan sin futuro. En fin, no hay injusticia más grande que juzgar como iguales aquellas cosas que no lo son.
Por su parte, en Domínguez Castro et al. v. E.L.A. I, supra, pág. 101, el Juez Presidente Señor Hernández Denton hizo las expresiones siguientes:
Disentimos del curso de acción que ha seguido hoy una ma-yoría del Tribunal, pues éste, luego de un trámite judicial apresurado que resulta contrario al debido proceso de ley, eli-mina los derechos adquiridos sobre sus empleos de miles de servidores públicos, en violación de la prohibición constitucio-nal contra el menoscabo de obligaciones contractuales estable-cida tanto en la Constitución del Estado Libre Asociado de Puerto Rico como en la Constitución de Estados Unidos [...] Específicamente, la Opinión que emite el Tribunal para decla-rar la constitucionalidad de la Ley Núm. 7 de 9 de marzo de 2009 se fundamenta en un expediente judicial desprovisto de la prueba necesaria para resolver de forma adecuada y funda-mentada la controversia.
Peor aún, ésta ni siquiera cumple con el ámbito mínimo de protección establecido por la Constitución federal, colocándonos al margen de la normativa que formuló el Tribunal Supremo de Estados Unidos sobre la referida prohibición constitucional en United States Trust Co. v. New Jersey, 431 U.S. 1 (1977), y que adoptó este Tribunal en Bayrón Toro v. Serra, 119 DPR 605 (1987). La necesidad de un expediente judicial completo que contenga prueba que permita evaluar adecuada-mente los criterios establecidos en dicha jurisprudencia re-sulta aún más imperiosa al considerar la magnitud del im-pacto de la Ley Núm. 7, supra, en los empleados públicos afectados y el efecto que la decisión del Tribunal tendrá en el país.
*101 Prácticamente al final de su voto disidente en Domínguez Castro et al. v. E.L.A. I, supra, pág. 106, el honorable Juez Presidente añadió lo siguiente:
No obstante, el trámite judicial expedito solicitado por el Estado y autorizado por este Tribunal redundó en los parcos expedientes ante nuestra consideración, lo que nos impide evaluar adecuadamente la constitucionalidad del referido plan de cesantías de la Ley Núm. 7, supra, según los criterios pau-tados por el Tribunal Supremo federal y por este Foro.
El impedimento es más grave aún al considerar el hecho de que nunca se celebró una vista evidenciaría ante un foro judicial que permitiera al Estado demostrar, según lo requiere United States Trust Co. v. New Jersey, supra, que su actuación es necesaria y cumple con los parámetros requeridos para va-lidar este tipo de legislación. Es por tal razón, precisamente, que la mayoría del Tribunal se ve obligada a descansar únicamente en la Exposición de Motivos de la Ley Núm. 7 y da por hechos los datos allí contenidos que, a fin de cuentas, sólo constituyen las alegaciones del Estado. De esta manera, el Tribunal realmente otorga completa deferencia al texto de la ley, abdica a su función judicial y, por lo tanto, priva a las partes de un debido proceso de ley, en clara contravención a lo resuelto en United States Trust Co. v. New Jersey, supra.
Finalmente, el honorable Juez Presidente concluyó con lo siguiente:
La magnitud del impacto de la Ley Núm. 7, supra, sobre los empleados públicos, la economía y la situación social de Puerto Rico nos requiere ser en extremo rigurosos y cuidado-sos al adjudicar la controversia ante nos. La decisión de la mayoría del Tribunal hoy no sólo echa a un lado los derechos de los empleados públicos, sino que al hacerlo obvia el proce-dimiento adecuado y la normativa aplicable establecida tanto por el Tribunal Supremo federal como por este Tribunal. Tra-tándose del sustento de miles de familias puertorriqueñas, y habiéndole dedicado gran parte de nuestra vida profesional al servicio público, no podemos tomar tan livianamente nuestra responsabilidad de vindicar los derechos constitucionales de la ciudadanía. Por lo tanto, disentimos. (Énfasis suprimido). Domínguez Castro et al. v. E.L.A. I, supra, pág. 110.
Como lo demuestran estas citas, basta con un análisis somero de la Opinión disidente del honorable Juez Presi- *102 dente Señor Hernández Denton en Domínguez Castro et al. v. E.L.A. I, supra, para concluir, en apretada síntesis, que su posición en contra de la determinación del Tribunal obedeció a que los empleados públicos no tuvieron en esa oca-sión la oportunidad de presentar prueba en favor de sus reclamos. El tono de las palabras del Juez Presidente en ese voto disidente fue de indignación y, de hecho, su con-vencimiento de que esta Curia había errado fue tan grande que llegó incluso a advertir que el caso podría ser revocado por el Tribunal Supremo federal.(2)
Sin embargo, en Trinidad Hernández et al. v. ELA et al., supra (Ley Núm. 3-2013), un caso en el que la cantidad de empleados públicos afectados fue al menos diez veces mayor y el menoscabo a sus derechos fue mucho peor, el Juez Presidente pareció avalar totalmente aquel “error”. En Trinidad Hernández et al. v. ELA et al., supra, el Juez Presidente estuvo completamente de acuerdo en confirmar al Tribunal de Primera Instancia que, sin darle la oportunidad a los empleados públicos de presentar su prueba, o sea, sin que se hubiese celebrado una vista evidenciaría o al menos la estipulación de alguna prueba, desestimó el caso. De manera que, con la conformidad del honorable Juez Presidente, un caso tan trascendental para los más de 100 mil empleados públicos fue desestimado meramente mediante el mecanismo procesal de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V.
De hecho, tal fue la prisa de este Tribunal en ese caso de la Ley Núm. 3-2013 —prisa que como vimos el distinguido Juez Presidente criticó en Domínguez Castro et al.— que la opinión para confirmar la acción del Estado contra los em-pleados públicos se emitió mediante el mecanismo de Re *103 gla 50, o sea, sin que los empleados públicos siquiera tuvieran la oportunidad de presentar su alegato ante este Foro. Un cambio tan evidente de posición solo puede justificarse si se explica razonablemente. De lo contrario, constituye una inconsistencia que provoca dudas —o cuando menos confusión— en cuanto a qué la motivó.
Con relación a la distinguida compañera Jueza Asociada Señora Fiol Matta, sus expresiones en Domínguez Castro et al. v. E.L.A. I, supra, pág. 118, fueron múltiples y variadas. Veamos solo algunas:
Primero, como ya explicamos, para determinar los hechos relevantes, la opinión mayoritaria se sustenta exclusivamente en la Exposición de Motivos y acepta, sin prueba, que existe una crisis fiscal y un problema de gigantismo gubernamental, así como que no existe otra opción para corregir el déficit es-tructural del gobierno central, que no sea el despido de em-pleados públicos y la suspensión de los derechos laborales. Esto, a pesar de que existen diversos informes o documentos que cuestionan estas hipótesis. En otras palabras, la mayoría de este Tribunal no tomó en consideración posiciones distintas a la adoptada por la Legislatura, porque no hubo oportunidad para recibir y dirimir prueba en un Foro de Primera Instancia o administrativo. (Enfasis suplido y en el original).(3)
Como vemos, la Jueza Asociada Señora Fiol Matta condenó en el caso de la Ley Núm. 7 el que la mayoría de este Tribunal sustentara su determinación solo en la exposición de motivos de la ley, aceptara sin prueba la existencia de una crisis fiscal y aceptara sin prueba el que no existía otra opción para corregir el déficit estructural del gobierno central. Además, la compañera señaló que no pudimos con-siderar “posiciones distintas a la adoptada por la Legislatura, porque no hubo oportunidad para recibir y dirimir prueba en un Foro de Primera Instancia [...]”. (Énfasis suprimido). Sin embargo y como hemos visto, ese prácticamente fue el mismo curso de acción en Trinidad Hernández et al. v. ELA et al., supra. Entonces la pregunta es: ¿por *104 qué la distinguida compañera no hizo esos mismos señala-mientos en el caso de la Ley Núm. 3-2013? ¿Por qué no solo guardó silencio, sino que avaló con su voto lo que antes condenó?
Por otro lado, en su Opinión disidente la Juez Asociada Señora Fiol Matta también señaló lo siguiente:
El análisis que he expuesto en estas apresuradas páginas me lleva a disentir enérgicamente de la decisión a la que hoy se adhiere la mayoría del Tribunal. Veo con mucha tristeza la posición asumida por la mayoría en esta decisión ante asuntos tan desgarradoramente complejos para la historia de nuestro pueblo. Esta es una decisión desinformada, resultado de un improvisado y mal aplicado proceso de certificación. En ausen-cia de prueba, la mayoría acaba por deshacer los fundamentos metodológicos de la mejor hermenéutica constitucional y ter-mina en el terreno de la especulación acientífica. (Enfasis suplido y en el original). Domínguez Castro et al. v. E.L.A. I, supra, pág. 156.
Nuevamente, con tono fuerte y clara indignación, la Jueza Asociada Señora Fiol Matta critica la determinación de la mayoría de esta Curia. La interrogante que surge ante estas expresiones es si los asuntos traídos por los de-mandantes en el caso de la Ley Núm. 3-2013 no fueron también “desgarradoramente complejos para la historia de nuestro pueblo”. Además, ¿cuáles fueron “los fundamentos metodológicos” que llevaron a la compañera en Trinidad Hernández et al. v. ELA et al., supra, a avalar el menoscabo sustancial de los derechos adquiridos de cientos de miles de funcionarios públicos?
Por otro lado, añadió la compañera Jueza Asociada Señora Fiol Matta:
La Constitución es algo más que un depósito de palabras; es un pacto social maduro entre el Estado y los ciudadanos, que ha sido bordado lentamente y se ha cimentado en dé cadas de consenso. Central a este pacto está el valor que le hemos con-cedido al trabajo en la estructura social de nuestro país. Nuestros tribunales han avalado esta apreciación por muchas décadas. Hoy, con esta determinación, la mayoría de este Tribunal rompe este pacto social y abandona en el desamparo a *105 miles de ciudadanos que han perdido su modo de vida y mantiene en la, inseguridad jurídica a los que aún conservan sus puestos. (Énfasis suplido y en el original). Domínguez Castro et al. v. E.L.A. I, supra, págs. 156-157.
Ante estas expresiones, es menester preguntarle a la apreciada compañera Jueza Asociada Señora Fiol Matta si con la determinación de esta Curia en Trinidad Hernández et al. v. ELA et al., supra, ¿no se rompió también ese “pacto social” al que ella correctamente hizo referencia en Domínguez Castro et al. v. E.L.A. I, supra?; ¿no se abandonaron y se dejaron también “en el desamparo a miles de ciudada-nos que han perdido” no solo su modo de vida, sino su modo de sustento en la vejez?
Por último, al final de su ponencia en Domínguez Castro et al. v. E.L.A. I, supra, pág. 157, la compañera Jueza Asociada Señora Fiol Matta le otorga a la mayoría de esta Curia —y a este servidor como Juez ponente en particular— una estocada realmente dolorosa, producto de su tempestuosa indignación:
Lamentablemente, después de esta decisión, el derecho constitucional en las escuelas de Derecho se enseñará “antes” y “después” de la Ley Núm. 7, pero no como el derecho de filiación antes y después de nuestra honrosa decisión en Ocasio v. Díaz, 88 D.P.R. 676 (1963), ni como la ley de divorcio antes y después de Figueroa Ferrer v. E.L.A., 107 D.P.R. 250 (1978), casos que ampliaron y fortalecieron los derechos del individuo frente al Estado. Todo lo contrario, esta decisión será estudiada como aquella que entronizó al Estado como el pro-tagonista principal del sistema frente al ciudadano. Ante esto, yo disiento. No puedo mantener silencio ni ser cómplice de esta enajenada visión. (Énfasis en el original).
Sin embargo, le pregunto a la compañera Jueza Aso-ciada Señora Fiol Matta —con todo el respeto y el aprecio que ella sabe le dispenso— ¿cómo deberá calificar la Academia y la historia del Derecho puertorriqueño la opinión de Trinidad Hernández et al. v. ELA et al., supra? Claro, la ventaja que se tiene en Trinidad Hernández et al. v. ELA et al., supra, es que, por haber sido una opinión per curiam, *106 nadie tiene que aceptar directamente la responsabilidad. Por otro lado, considerando que en la cita anterior la dis-tinguida compañera mencionó que no pudo “mantener si-lencio [para] no ser cómplice” de lo que denunció como una enajenación, llama bastante la atención lo “silenciosa” de su conformidad en Trinidad Hernández et al. v. ELA et al., supra.
En conclusión, en ocasiones, cambiar de posición no debe ser visto como inconsistencia, sino como la intención de no perpetuar lo que se considera un error. Sin embargo, lo que no debe ocurrir es que “tal mutación” ocurra sin explicación alguna. Respetuosamente, los compañeros alu-didos tienen la palabra.
Por todo lo anterior, estoy conforme con la Resolución de este Tribunal.

 “Salary and pensions are not synonymous”. Oregon State Police Officers’ Ass’n v. State, 918 P.2d 765 (Or. 1996).

 El honorable Juez Presidente expresó en aquella ocasión: “A nuestro juicio, la Opinión del Tribunal constituye una invitación al Tribunal Supremo de Estados Uni-dos para que corrija los errores de este Foro, al igual que lo hizo en El Vocero de Puerto Rico v. Puerto Rico, 508 U.S. 147 (1993)”. Domínguez Castro et al. v. E.L.A. I, 178 DPR 1, 107 (2010). Como ya es sabido, el Tribunal Supremo federal no acogió el certiorari presentado en contra de la determinación de este Foro.

 Opinión disidente de la Jueza Asociada Señora Fiol Matta.