Opinión de conformidad emitida por la
Jueza Asociada Señora Pabón Charneco,
a la cual se une el Juez Asociado Señor Estrella Martínez.
Nuestra clase magisterial, que con tanto sacrificio y vo-cación reparte el pan de la enseñanza con la esperanza de forjar el Puerto Rico que tanto anhelamos, merece mucho más que ser atropellada por el tren de una legislación diá-fanamente irrazonable. El norte en la brújula que apunta al progreso socioeconómico de nuestra sociedad no puede darse a expensas de nuestros maestros y maestras. Nues-tros educadores merecen saber que la confianza que han depositado en las instituciones que conforman los pilares de nuestra democracia no ha sido en vano. Más importante aún, merecen saber que este Tribunal jamás claudicará a su deber constitucional de velar porque los postulados de nuestra Constitución no sean quebrantados.
Por entender que a la luz de la cláusula constitucional que prohíbe el menoscabo de obligaciones contractuales,(1) la Ley Núm. 160-2013 es irrazonable y por consiguiente inconstitucional, estoy conforme con la Opinión que emite hoy una Mayoría de este Tribunal. A pesar de que en más de una ocasión —y hoy me reafirmo por tercera vez— he *882 expresado mi sentir en torno a las reformas de retiros gubernamentales, no puedo permitir que la decisión que hoy suscribimos pase a las páginas de nuestra historia constitucional sin antes emitir unas breves expresiones. Véase Trinidad Hernández et al. v. ELA et al., 188 DPR 828, 842 (Opinión Disidente emitida por Pabón Charneco, J.) y Trinidad Hernández et al. v. ELA et al., 189 DPR 251 (Voto Particular Disidente emitido por Pabón Charneco, J.). Mi conciencia me lo exige y nuestra clase magisterial, indiscutiblemente, se lo merece.
I
Hoy una Mayoría de este Tribunal cumple con su deber constitucional de velar por que el Estado no menoscabe sustancialmente las obligaciones que ha asumido sin cum-plir con el estándar exigido por nuestro ordenamiento. Con ello, a su vez, se le devuelve la paz a miles de educadores que se encontraban en un estado de desasosiego ante la incertidumbre por conocer su futuro económico a la luz de los cambios generados por la Ley Núm. 160-2013. Como muy bien se discute en la Opinión que antecede, para que una reforma a un sistema de retiro gubernamental sea constitucional nuestro ordenamiento exige que esta sea razonable y necesaria para adelantar su solvencia actuarial. Bayrón Toro v. Serra, 119 DPR 605, 618 (1987). En el caso de autos, las partes estipularon: (1) que los maestros de-mandantes otorgaron un Contrato válido sobre su retiro con el Gobierno de Puerto Rico y (2) que el Estado menoscabó sustancialmente ese Contrato. En vista de ello, nues-tro análisis se limita a determinar si ese menoscabo sus-tancial persigue un interés importante en beneficio del bienestar general y si la Ley 160-2013 es razonable y ne-cesaria para adelantar ese interés. íd.
No hay que forzar mucho la mirada al horizonte para vislumbrar que la Ley Núm. 160-2013 no cumple con las exigencias antes mencionadas. La evidencia presentada *883 por los maestros demandantes devela que, lejos de garan-tizar la solvencia actuarial del Sistema de Retiro de Maestros, la Ley Núm. 160-2013 lo coloca en una posición mu-cho más frágil. La evidencia pericial presentada por los maestros demandantes, y discutida in extenso en la Opi-nión que antecede, lleva a la conclusión que la ley impug-nada no es razonable. Es difícil argumentar que una ley que se diseñó para atajar el déficit estructural de un Sis-tema de Retiro pero que en vez agrava el problema, sea considerada como razonable.
Según se discute en la Opinión Mayoritaria, los maestros demandantes lograron demostrar con prueba pericial contundente que con la implantación de la Ley Núm. 160-2013 existe la posibilidad de un retiro masivo de maestros que liquidaría los activos del Sistema antes de lo previsto.(2) El Informe Actuarial de Milliman de 2012, en el cual se basó el Estado para sustentar la viabilidad de la Ley Núm. 160-2013, establece que de no reformarse el Sistema de Retiro de Maestros sus activos se agotarían en el 2020. Según el actuario José M. Pérez Díaz de retirarse cinco mil (5,000) maestros, el Sistema agotaría sus activos en el 2022.
Por otro lado, de retirarse una cantidad mayor de maestros los activos se agotarían antes de esa fecha. Es decir, el Estado entendió que para extender por dos (2) años la vida actuarial del Sistema era razonable y necesario menosca-bar los derechos de nuestros educadores con relación a su retiro. Este dantesco proceder es claramente irrazonable.
Si el Historial Legislativo de la Ley Núm. 160-2013 ado-lece de un estudio actuarial que demuestre sus efectos y *884 sustente su viabilidad, ¿cómo sabemos que en efecto esta pieza legislativa garantiza la solvencia del Sistema ? El his-torial de este estatuto demuestra que debido a un proceso legislativo atropellado, no se realizó un estudio ponderado sobre la cantidad de maestros que se retirarían repentina-mente como resultado de esa legislación ni el efecto que ese éxodo en masa tendría sobre la solvencia misma del Sistema. De sostenerse su constitucionalidad, el posible disloque que provocaría la Ley Núm. 160-2013 en detri-mento de nuestro sistema de educación es tal que su irra-zonabilidad, sencillamente, es evidente.
En fin, los maestros demandantes evidenciaron que las medidas adoptadas por la Ley Núm. 160-2013 no garantizan la solvencia actuarial del Sistema y por consiguiente no adelanta el interés importante requerido por nuestro ordenamiento en casos de reformas de retiros gubernamentales. Bayrón Toro v. Serra, supra. A contrario sensu, demostraron que esa Ley deteriora aún más la situación actuarial del Sistema en una fecha más próxima que la proyectada. En vista de ello, coincido, inter alia, en que la Ley Núm. 160-2013 es inconstitucional por representar un menoscabo sustancial en la expectativa de los demandan-tes respecto a su pensión de retiro que se hizo de manera irrazonable y sin lograr el interés importante que motivó la existencia de esta pieza legislativa.
II
Es por ello que reafirmo mi conformidad con la Opinión que antecede. En su afán de evitar a toda costa una posible degradación al crédito de la Isla,(3) y con un trámite azaroso, la Asamblea Legislativa aprobó una Ley que no adelanta el interés estatal importante requerido por nuestro *885 ordenamiento en casos de reformas de retiro: garantizar la solvencia del sistema. De hecho, todo lo contrario, se aprobó una pieza legislativa que lo empeora y desesta-biliza. Si eso no es irrazonable, no sé qué lo es.
En esta ocasión, la Asamblea Legislativa olvidó que la deferencia que nos merece su poder para legislar asuntos económicos no es sinónimo de sumisión. Hoy reafirmamos valientemente que la función de esta Curia es velar por que los Cuerpos Legislativos no se descarrilen de la vía que delinea sus facultades cuando ejercen su poder. Esta vez, el tren se les quedó sin frenos y amenazaba con atropellar a nuestros servidores públicos. Con la Opinión que hoy emi-timos, evitamos ese lamentable escenario.

 Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1.

 Según la Sra. Wanda G. Santiago López, Directora Ejecutiva Interina del Sistema de Retiro de Maestros, luego de la aprobación de la Ley Núm. 160-2013 alrededor de diez mil (10,000) participantes activos se han orientado sobre los bene-ficios de retiro. Declaración Jurada de la Sra. Wanda G. Santiago López, pág. 5, Caso Núm. CT-2014-0003, Pieza 1. Por otro lado, el abogado del Sistema de Retiro de Maestros, el Ledo. Rafael Escalera Rodríguez, aseveró en la vista oral que al 26 de marzo de 2014, fecha de la vista, aproximadamente 7,340 miembros del Sistema de Retiro de Maestros cualifican para el retiro. Grabación Vista Oral de 26 de marzo de 2014, 1:09:04.

 Reitero mi postura en cuanto a que una amenaza de una degradación al crédito es una consideración exógena de Derecho que no debería guiar el proceso de adjudicación de este Tribunal. Véase Trinidad Hernández et al. v. ELA et al., 188 DPR 828, 842 (2013) (Opinión Disidente emitida por Pabón Charneeo, J.).