Voto de conformidad emitido por el
Juez Asociado Señor Kolthoff Caraballo.
Como consecuencia de este plan de economías vino la huelga. Le-vantábase la llamarada del odio. Era lo que predicaba Segundo: odio al rico. Ciertamente que era muy raquítico el jornal; además, acuciado por don Oscar, me vi obligado a cometer ciertos abu-sos, los mismos atropellos que le reproché a don Flor. Me daba perfecta cuenta de las injusticias, pero persistía dándoles aliento, todo por “quedar bien” con don Oscar y “asegurarme” el porvenir. Trataba de excusarme pensando que la situación lo requería así. Era preciso salvar a toda costa a la Central de la ruina. Después de todo, los peones deberían agra-decer que se les proporcionase trabajo en esta hora crítica en que se contemplaban legiones de inactivos. Así quise callar los gritos de la conciencia.(1)
Solo en la costumbre de las antiguas monarquías el So-berano arrebataba las tierras y las cosechas, dejando a los súbditos en la más abyecta miseria. Algo parecido es lo *967 que, en términos pragmáticos, ocurre con la Ley Núm. 160-2013 que nos ocupa, y que es la esencia de su problema constitucional: su profunda irrazonabilidad e injusticia.
Una cosa —de por sí triste— es que el Estado despida al obrero. No obstante, otra muy distinta es que ese mismo Estado niegue a ese obrero el disfrute de lo que este sem-bró para los tiempos finales de su jornada en la vida. Por-que, en el caso de un despido, tarde o temprano, con es-fuerzo y la ayuda del Creador, ese infortunio terminará; otro empleo aparecerá; otra cosecha se dará y suplirá el pan de su alivio. Pero si al tiempo de la zafra de su vida productiva, lo que sembró con paciencia para el “tiempo muerto” le es “confiscado”, ciertamente a ese ser humano le faltarán los días para volver a sembrar o las fuerzas en el machete para poder cosechar. Por eso, hoy expreso con gran entusiasmo mi conformidad con la decisión de este Tribunal.
En el caso de autos, hemos concluido que mediante la Ley Núm. 160-2013, el Estado ha menoscabado sustancialmente y de forma irrazonable las obligaciones contractuales que acordó con la clase magisterial pública del País. Por ello, expreso este voto de conformidad con esta mayoría y reafirmo mis expresiones en Trinidad Hernández et al. v. ELA et al., 188 DPR 828 (2013). Entre varias razones, por-que ciertamente el Estado no ha cumplido, como es el fun-damento de la Opinión mayoritaria, con el requisito de ra-zonabilidad al no poder demostrar que la ley aprobada atiende efectivamente su propósito, mientras reduce las pensiones de nuestros obreros y obreras de la educación pública a niveles que hacen prácticamente imposible retirarse,(2) mientras que, a la vez, aumentan las aportaciones que estos tienen que hacer al Sistema de Retiro (Sistema).
*968 I

El peso de la prueba

Como bien fundamenta la Opinión mayoritaria, nuestra Constitución prohíbe al Estado la promulgación de leyes que menoscaben las obligaciones contractuales.(3) Al exa-minar las actuaciones de las ramas políticas al amparo de la cláusula de menoscabo de obligaciones contractuales, el escrutinio aplicable por el foro judicial va a depender del tipo de contrato en cuestión, ya sea un contrato privado o uno público.(4) Así pues, en casos como el de autos, cuando el menoscabo se da en el contexto de la contratación pú-blica el escrutinio judicial tiene que ser más riguroso, puesto que el interés propio del Estado puede estar involucrado.(5)
Claro está, no debe entenderse que porque el Estado sea parte significa que hay una prohibición absoluta que im-pida el poder de reglamentación del Estado en beneficio del interés público.(6) Por lo tanto, nuestra función como foro judicial al evaluar la validez de una legislación según la cláusula del menoscabo de obligaciones contractuales en circunstancias como esta consiste en sopesar y buscar un balance entre el deber del Estado de salvaguardar el bien-estar y la seguridad de la ciudadanía, y el interés de proteger la estabilidad en las relaciones contractuales.(7) Con-forme lo anterior, hemos establecido que en los casos de contratación pública procede que el reclamante demuestre primeramente que existe una obligación contractual y que la modificación de la obligación ha causado un menoscabo *969 sustancial o severo en sus expectativas. Esto pues, la ga-rantía constitucional contra el menoscabo de obligaciones contractuales se activa cuando se afectan adversamente los términos o condiciones esenciales del contrato, de manera que al modificarse se frustran las expectativas razonables de alguna de las partes.(8)
Es por todo esto, que el peso de la prueba queda inicial-mente en manos del litigante que reclama una violación a su protección constitucional. Sin embargo, una vez el recla-mante demuestra que existía una relación contractual y que la modificación de dicha relación ha causado un me-noscabo sustancial o severo por parte del Estado, este úl-timo está obligado a justificar las razones que han moti-vado su actuación.
Si bien es cierto que no hay una voz al unísono en cuanto a este aspecto, son varios los tribunales federales y estatales que han pensado de esta forma.(9) Incluso, en una situación en la cual se ventilaba un reclamo sobre este asunto ante el Tribunal Supremo federal, ese máximo foro expresó lo siguiente:
In the instant case the State has failed to demonstrate that the repeal of the 1962 covenant was similarly necessary.
We also cannot conclude that repeal of the covenant was reasonable in light of the surrounding circumstances. (Enfasis suplido).(10)
Como podemos ver, el Tribunal Supremo federal deter-minó que el Estado había fallado en probar que sus actua-ciones fueron necesarias y razonables. Aunque no podemos afirmar que dicha Corte ha establecido expresamente que el peso de la prueba en circunstancias como las del caso de *970 autos corresponde al Estado, tales expresiones y su con-texto no me dejan lugar a duda de que corresponde al Es-tado el peso de la prueba.
Máxime, cuando no podemos negar responsablemente que aunque estatutos como el que nos ocupa se identifican como del tipo socioeconómico, el de autos tiene sobre los perjudicados un profundo ingrediente laboral, distinto a otros tipos de casos de menoscabo sustancial de la cláusula constitucional. Siendo así, y ante la prueba prima facie presentada por los obreros afectados de un menoscabo sus-tancial, ¿por qué hemos de librar al patrono de probar en primer orden que su acción fue legítima simplemente por-que es el Estado? ¿Por qué hemos de negarle al servidor público una herramienta procesal y probatoria que le reco-nocemos al empleado en la empresa privada en circunstan-cias, por ejemplo, como lo son los casos de despido injusti-ficado?

Ante la ausencia o el vacío de una directriz sobre este aspecto en la ley que nos ocupa, ¿no debe ser nuestra her-menéutica del estatuto una más liberal en beneficio del obrero, ajustándola así a lo que es nuestra norma conforme a nuestro derecho laboral? De todos modos el que tiene la verdad y la razón solo necesita de los recursos apropiados para probarlo. ¿No es acaso el Estado el que tiene los mejores recursos para probar que es razonable su acción?

(11)

Lo anterior cobra aún mayor sentido cuando considera-mos que es el Estado el que con su acción ha interrumpido la estabilidad de la relación contractual y es el que, a su vez, debe justificar su actuación como necesaria y razonable. Cabe señalar que, nuevamente, es el Estado el que ostenta los recursos para demostrar cuáles fueron sus motivaciones para interrumpir el cumplimiento de las obli-gaciones contractuales.
*971 En el caso de autos, las partes estipularon que al mo-mento de aprobar la Ley Núm. 160-2013 existía uná rela-ción contractual entre ambos y, a su vez, que el menoscabo causado por la aprobación de dicha ley es sustancial. Para sostener la validez de la Ley Núm. 160-2013, procede en-tonces que el Estado justifique el menoscabo causado como necesario y razonable.
El Estado ha establecido a ciencia cierta que el Sistema requiere de ajustes en los meses venideros para salvar su solvencia. De igual manera, el Estado ha demostrado que aprobó la Ley Núm. 160-2013 en aras de atender la crisis fiscal del Sistema. Sin embargo, el Estado no ha probado en efecto que la referida ley garantiza la solvencia econó-mica del Sistema y por ende que el menoscabo causado al aprobar la ley fuera uno necesario y razonable. Esto, a pe-sar de que los demandantes han presentado prueba que tiende a sostener que el efecto de la ley aprobada no tan solo es deficiente en atender la situación, sino que podría empeorar las finanzas del Sistema, acelerando su colapso.
El Gobierno no ha presentado prueba que justifique su manera de obrar como necesaria y razonable. Por su parte, los demandantes han demostrado no tan solo que existen medidas menos onerosas —las cuales fueron estudiadas y suscritas en su mayoría por un Comité de Diálogo y Nego-ciación en el cual la Rama Ejecutiva tuvo representa-ción — , sino que la medida es irrazonable por no atender adecuadamente el problema fiscal del Sistema.
II

El menoscabo dentro del análisis de razonabilidad

La Constitución del Estado Libre Asociado de Puerto Rico dispone expresamente que “[n]o se aprobarán leyes que menoscaben las obligaciones contractuales”.(12) De una simple lectura de la cláusula contra el menoscabo de obli- *972 gaciones contractuales, parecería que tal prohibición es una absoluta cuando es por parte del Estado. Sin embargo, la interpretación que se le ha dado tanto a la cláusula con-tenida en nuestra Constitución como en la federal ha acla-rado que solo se activa tal protección ante un menoscabo sustancial o severo.(13) Por ello, el menoscabo que activa la protección constitucional es aquel que modifica de forma sustancial o severa las expectativas de las partes en la re-lación contractual. Esto no debe entenderse como que se limita únicamente a la acción estatal que destruye por completo las expectativas de una parte.(14) Ahora bien, este primer paso de determinar si el menoscabo causado es sus-tancial o severo, es previo e independiente al análisis sobre necesidad y razonabilidad exigido para sostener su validez.
Dentro del análisis de lo que implica razonabilidad como escrutinio en el contexto de la contratación pública, como en el caso de autos, el grado de menoscabo ocupa un papel extremadamente importante. En todos estos casos, la razonabilidad del estatuto se determina tomando en consideración la dimensión e importancia del interés público promovido por el mismo.(15) Por lo tanto, mientras mayor sea el menoscabo causado, mayor deberá ser el in-terés público involucrado para lograr sostener la validez del estatuto.
Cabe señalar que respecto al criterio de razonabilidad y necesidad, el Tribunal Supremo federal ha manifestado que el Estado no está en total libertad de considerar menoscabar sus obligaciones contractuales a la par con otras medidas de política pública.(16) De igual forma, el Estado no puede ocasionar un menoscabo mayor al necesario para *973 atender el interés público apremiante.(17) A estos efectos, es insostenible un estatuto que imponga un menoscabo más drástico, cuando existe una medida que con un menoscabo más moderado resuelva el mismo asunto.(18)
Por ello es que hemos establecido anteriormente que no se sostendrá el menoscabo a la obligación contractual del Estado si existen medidas alternas que sean menos drás-ticas o severas que la ejercida por el Estado para lograr su objetivo.(19) Así pues, al evaluar la razonabilidad y necesi-dad de la medida en el contexto de la contratación pública, contrario a los casos sobre contratación privada, no es apropiado dar completa deferencia a la determinación le-gislativa sobre la necesidad o razonabilidad de la legislación. En lo pertinente, el Tribunal Supremo federal señaló:
As is customary in reviewing economic and social regulation, however, courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure. [...] [But, as to public contracts], complete deference to a legislative assessment of reasonableness and necessity is not appropriate [...](20)
Así, debemos recalcar que tampoco debe entenderse que porque el Estado sea parte no se le pueda dar ninguna deferencia en cuanto a la necesidad o razonabilidad de la medida. Cuando hablamos de restarle deferencia a la Asamblea Legislativa, nos referimos a auscultar si esta consideró el grado de menoscabo de las obligaciones a la par con otras alternativas; si el Estado menoscabó sustan-cialmente sus obligaciones cuando con un menoscabo me-nos drástico pudiera haber alcanzado el fin perseguido; y, *974 por último, si la actuación del Estado es irrazonable a la luz de las circunstancias.
Es importante reiterar que el grado de menoscabo cau-sado es un asunto de umbral al momento de determinar la razonabilidad del estatuto. Por ello, cuando nos vemos ante la situación de evaluar la validez de un estatuto por su razonabilidad es requerido, entre otras cosas, analizar si el mismo consigue efectivamente el interés apremiante del Estado. Como bien hemos mencionado, resulta insoste-nible un estatuto que causa un menoscabo severo, tomando en consideración que ni tan siquiera resuelve en su totali-dad el problema que motiva su aprobación.
Este Tribunal está impedido constitucionalmente de dic-taminar la forma en la cual las otras ramas de gobierno deben atender sus asuntos de política pública. Esto signi-fica que ciertamente no podemos entrar a dirimir conside-raciones de política pública desde el estrado. Sin embargo, es precisamente una de nuestras funciones constituciona-les evaluar si en su proceder al establecer la política pú-blica del País, las otras ramas de gobierno han sobrepa-sado sus' límites constitucionales. Es decir, no podemos evaluar cómo deberían cumplir sus deberes, sino cómo es-tas no pueden actuar en el cumplimiento de sus deberes.
Como surgió claramente en la vista oral celebrada en este caso, la minoría de este Tribunal equivocadamente en-tiende que estamos sobrepasando nuestros poderes consti-tucionales al evaluar si existían alternativas menos onerosas. No obstante, por otra parte, esa minoría pre-tende validar el recorte a las pensiones de retiro que a todas luces aparenta ser irrazonable, expresando que la parte demandante no ha podido probar la existencia de medidas menos onerosas. Parecería un sinsentido requerir, por un lado, la presentación de medidas menos onerosas para sostener los planteamientos de los peticionarios y, por otro lado, argumentar que la existencia de tales alternati-vas no puede ser considerada por esta Corte.
*975 Ciertamente este Tribunal no es el foro para evaluar la idoneidad de tales medidas, pues eso corresponde a la dis-creción del legislador. En lo que respecta, nos compete sim-plemente auscultar si existen o no otras medidas, y si fue-ron evaluadas por la Rama Legislativa previo a aprobar el menoscabo sustancial. Cabe reiterar que de la propia Rama Ejecutiva, el Secretario de Estado, Hon. David Enrique Bernier Rivera y el Secretario del Trabajo, Hon. Vance E. Thomas Rider, con posterioridad a la aprobación de la Ley Núm. 160-2013 han sugerido la posible existen-cia de medidas menos onerosas y, por ello, han constituido un Comité de Diálogo y Negociación para auscultar las mismas. Posteriormente, como surge de los hechos en la Opinión mayoritaria, ese Comité rindió un informe en el cual recomendaba varias medidas menos onerosas.
HH HH J-H

El menoscabo de obligaciones contractuales cuando el Es-tado es parte requiere un escrutinio distinto al debido pro-ceso de ley en su vertiente sustantiva

Nuevamente integrantes de este Tribunal confunden nuestro proceder en el caso Domínguez Castro et al. v. E.L.A. I, 178 DPR 1 (2010), con el caso de autos. Dicho caso versaba principalmente sobre si a los peticionarios se les había salvaguardado su derecho constitucional a un debido proceso de ley en su vertiente sustantiva. Como señalamos, en circunstancias en las cuales se cuestionan las actuaciones del Estado en cuanto a una violación al debido proceso de ley en su vertiente sustantiva, el escrutinio es muy distinto y mucho más leniente que el requerido cuando se alega un menoscabo de obligaciones contractuales. El escrutinio a utilizarse en el caso de debido proceso de ley en su vertiente sustantiva es un escrutinio de razonabilidad (nexo racional) y está ampliamente discutido en Domínguez Castro et al. v. E.L.A. I, supra.
*976 En aquella ocasión la cuestión planteada sobre la viola-ción a la cláusula de menoscabo de obligaciones era mí-nima y se limitaba a que algunos servidores públicos esta-ban cobijados por convenios colectivos que regulaban la forma y la manera de prescindir de sus servicios. La Ley Núm. 7-2009 modificaba el convenio colectivo por un tiempo delimitado, alterando temporeramente el procedi-miento en que se podía prescindir de los servicios de estos empleados e igualándolo a los otros miles de empleados públicos que no estaban cobijados por el convenio colectivo. Cabe señalar que ese estudio se hizo y este Tribunal avaló el menoscabo como razonable, pues fue temporero y bus-caba poner en igual posición a todos los empleados públicos.
Cuando emití mi voto en el caso de Domínguez Castro et al. v. E.L.A. I, supra, tuve la difícil tarea de sopesar el efecto adverso que causaba a un sector de la sociedad para salvar las finanzas de todo Puerto Rico. Soy consciente de que mucha gente se vio afectada y sufrió la sensación que causa la pérdida de un empleo. Esa sensación que senti-mos en la inmediatez cuando se nos apaga la luz sorpresivamente. Ciertamente, la Ley Núm. 7-2009 dejó a un número sustancial de servidores públicos sin empleo, lo cual para muchas familias significó la pérdida de su única fuente de ingresos. Sin embargo, dicha ley contenía varias ayudas para estos afectados, mientras adelantaba un fin importante para todo el País.
Que no quepa duda, hoy nos enfrentamos a una medida muy distinta. Si bien muchos de los afectados por la Ley Núm. 7-2009 aún hoy, 4 años después, no se recuperan de todos sus efectos, para muchos la luz volvió a encenderse. Son muchos los puertorriqueños y puertorriqueñas que han emprendido nuevas vidas y ante la adversidad no tan solo la sobrepusieron, sino que sacaron provecho de la si-tuación y hoy se encuentran en mejor posición que antes. Muchos de estos ciudadanos, con mucho esfuerzo de su parte, han comenzado nuevos negocios ayudados precisa- *977 mente por los beneficios contenidos en la propia Ley Núm. 7-2009. Otros, por su parte, fueron contratados por la em-presa privada y hoy cuentan nuevamente con un sustento para sus hogares. No fue fácil para ninguno, sencillamente porque nunca es fácil ver como se nos sacude el suelo y repentinamente se nos cambia nuestra realidad inmediata, independientemente de la crisis económica que lo justifique.
No obstante, estoy completamente convencido de que el asunto que hoy nos ocupa es muy distinto. Para estos miles de maestros y maestras podrán pasar los años, podrán cambiar de empleo, incluso podrán tomar algunas previsio-nes, pero su retiro, de no haber sido por la decisión que tomamos hoy se hubiera esfumado para nunca volver.
El gremio de trabajadores afectados sustancialmente por la Ley Núm. 160-2013, es aquel que el propio estatuto se refiere como “eje de enseñanza, es el profesional a cargo de la labor más trascendental en la vida de sus alumnos; la influencia de su impacto perdura para siempre. La clase magisterial tiene en sus manos la prosperidad de todo un país”.(21) Sin embargo, es precisamente ese sector al que como “muestra de agradecimiento” el Estado pretendía condenar a la pobreza.
Hoy, como en Trinidad Hernández et al. v. ELA et al., supra, pág. 847, tengo que expresar nuevamente que
[...] pienso que si el barco está haciendo agua y existe la ame-naza real de un naufragio, se lanzan por la borda primera-mente las bagatelas. Luego, si es necesario, las cosas impor-tantes y finalmente las cosas más valiosas. Para cualquier persona trabajadora la pensión por la cuál ha trabajado toda su vida constituye su seguridad y posesión más valiosa. Por eso, y aunque estoy impedido de identificarlas, veo claramente muchas “bagatelas fiscales” y múltiples “cosas importantes” que precisarían ser arrojadas por la borda, antes que las va-liosas pensiones de decenas de miles de nuestros empleados públicos. (Enfasis en el original).
*978 Ciertamente, este Tribunal está impedido de dictaminar la forma como las ramas de gobierno deben resolver un problema de política pública. No obstante, como resuelve hoy la mayoría de este Tribunal, estamos obligados a im-pedir cualquier acción de las ramas políticas que vaya dirigida a menoscabar de forma irrazonable sus obligaciones contractuales con sectores de esta sociedad. Por todo lo anterior, estoy conforme.

 E.A. Laguerre, La llamarada, 31ra ed. rev., San Juan, Ed. Cultura, pág. 158. Este texto de una de las grandes obras de nuestra literatura puertorriqueña me recuerda la pasión con que daba su cátedra Mrs. Corchado, mi maestra de español en la Escuela Libre de Música de Hato Rey. Con ella me inicié en esta jomada de apreciar nuestra literatura.

 Según la prueba presentada, en varios casos las pensiones se han disminuido a cifras cercanas al 40% del salario de la persona, luego de cumplir con 30 años de servicio.

 Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1.

 Domínguez Castro et al. v. E.L.A. I, 178 DPR 1, 80 (2010).

 Trinidad Hernández et al. v. ELA et al., 188 DPR 828, 835 (2013); Domínguez Castro et al. v. E.L.A. I, supra, pág. 81; Bayrón Toro v. Serra, 119 DPR 605, 620 (1987); U.S. Trust Co. of New York v. New Jersey, 431 US 1, 17 (1977).

 Trinidad Hernández et al. v. ELA et al., supra, pág. 834; Bayrón Toro v. Serra, supra, pág. 619. Veáse, además, U.S. Trust Co. of New York v. New Jersey, supra, pág. 16.

 U.S. Trust Co. of New York v. New Jersey, supra, pág. 21.

 Domínguez Castro et al. v. E.L.A. I, supra, pág. 83; Allied Structural Steel Co. v. Spannaus, 438 US 234, 245-246 (1978); City of El Paso v. Simmons, 379 US 497 (1965).

 Southern California Gas Co. v. City of Santa Ana, 336 F.3d 885, 894 (9no Cir. 2003); Toledo Area AFL-CIO Council v. Pizza, 154 F.3d 307, 323 (6to Cir. 1998); Massachusetts Community College Council v. Com., 649 N.E.2d 708, 712-713 (1995); State of Nev. Employees Ass’n, Inc. v. Keating, 903 F.2d 1223, 1228 (9no Cir. 1990).

 U.S. Trust Co. of New York v. New Jersey, supra, pág. 31.

 Mi posición con relación a este aspecto se limita a reclamos al amparo de la cláusula constitucional que prohíbe el menoscabo de obligaciones contractuales que nos ocupa, y en causas de acción con un fuerte ingrediente laboral, en el que el empleado ha probado prima facie un menoscabo sustancial.

 Art. II, Sec. 7, Const. ELA, supra, ed. 2008, pág. 296.

 Trinidad Hernández et al. v. ELA et al., supra, pág. 834; Domínguez Castro et al. v. E.L.A. I, supra, pág. 80.

 U.S. Trust Co. of New York v. New Jersey, supra, pág. 26.

 Warner Lambert Co. v. Tribunal Superior, 101 DPR 378 (1973); Home Bldg. & Loan Ass’n v. Blaisdell, 290 US 398 (1934); C.H. Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv. L. Rev. 692 (1960).

 U.S. Trust Co. of New York v. New Jersey, supra, págs. 30-31.

 Íd., pág. 31

 Íd.

 Trinidad Hernández et al. v. ELA et al., supra, pág. 839; Domínguez Castro et al. v. E.L.A. I, supra, pág. 84. Véase, además, U.S. Trust Co. of New York v. New Jersey, supra, págs. 29-31.

 U.S. Trust Co. of New York v. New Jersey, supra, págs. 22-23 y 26.

 Exposición de Motivos de la Ley Núm. 160-2013, pág. 1.